980 P.2d 1204 (1999)
138 Wash.2d 70
In re the Detention of Ronald Lane PETERSEN.
No. 65866-8.
Supreme Court of Washington, En Banc.
Argued September 9, 1998.
Decided June 10, 1999.
*1206 Robert W. Goldsmith, Suzanne L. Elliott, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, James E. Rogers, Deputy, David Hackett, Deputy, Seattle, for Respondent.
*1205 TALMADGE, J.
We decide in this case whether committed sexually violent predators who seek appellate review of annual show cause hearings concerning their continuing confinement may appeal as of right, or whether they must file a motion for discretionary review. Where the trial court finds in a hearing under RCW 71.09.090(2) there is no probable cause to believe a violent sexual predator's condition has changed, an appellate court reviews such a decision under the provisions of RAP 2.3(b).
We also decide whether the 1997 finding that Petersen, who has been confined as a sexually violent predator since 1995, failed to show facts existed to warrant a full evidentiary hearing on whether his condition had so changed that he was safe to be conditionally released to a less restrictive alternative or unconditionally released. We grant discretionary review of the trial court's decision on the 1997 annual review, and hold the State *1207 presented ample evidence Petersen's condition had not changed. We affirm the trial court's decision.

ISSUES
1. When a person under commitment as a sexually violent predator wishes to appeal a ruling by the trial court concerning probable cause to believe the person's condition has changed pursuant to RCW 71.09.090(2), is the appeal as of right or must the person file a motion for discretionary review?
2. Did the trial court properly deny Petersen's motion to invalidate the 1997 evaluation of his condition?

FACTS
Ronald Lane Petersen has a history of brutal sexual assaults that extends back to the age of eight. At that tender age, Petersen and another boy held down a third boy and pulled his pubic hairs out one by one. Petersen admitted molesting younger girls. At age 10, he began exposing himself to his sister and passing cars. At age 15, he was caught molesting a 6 year old girl. Petersen fantasized about rape.
From 1972 to 1974, Petersen admitted numerous rapes and attempted rapes in the Yakima area. He generally committed his crimes while wearing a ski mask, armed with a pistol or other weapon. In one instance, he raped a disabled woman within eyesight of her 10 year old son. Upon being arrested, Petersen agreed in April 1974 to plead guilty to rape and three other rape counts were dismissed. He enrolled in Western State Hospital's sexual psychopath program. He was granted work release from that program in December 1975, but promptly committed additional sexual assaults while on work release.
Upon his formal discharge from the Hospital in March 1976, Petersen assaulted a young woman in July 1976 and was convicted of second degree assault with intent to commit rape. He was released from prison in July 1987, but committed a further sex offense in December 1987. In a particularly heinous crime, Petersen, masquerading as a law enforcement officer, forced a young mother to leave her eight month old baby in a car at the side of the road while he drove away with her to commit the crime. For this crime, Petersen pleaded guilty to first degree rape and was imprisoned until September 1993.
As a result of these multiple crimes, after Petersen's last release from prison, the State sought his commitment as a sexually violent predator pursuant to chapter 71.09 RCW, relating to commitment of sexually violent predators.[1] After a 1995 trial in which the State's experts testified Petersen suffered from paraphilia,[2] sexual sadism, and an antisocial personality disorder, a unanimous jury concluded Petersen was a sexually violent predator needing total confinement. He has been at the Special Commitment Center (SCC) in the custody of the Department of Social and Health Services (DSHS) since. Petersen appealed that decision to us (Supreme Court Docket No. 63398-3).
Petersen has undergone three annual evaluations at SCC since his original commitment. He has declined all treatment at SCC and has declined to present any expert testimony on his behalf in any of his annual reviews, although he has a statutory right to obtain an expert's opinion at public expense if he is indigent. RCW 71.09.070. Petersen's annual evaluation in 1996, based on the declarations of two State experts, concluded he did not meet the criteria for release from confinement. The trial court subsequently found Petersen's condition had not changed, largely because he refused sex offender treatment at SCC. The trial court concluded the report established a basis, with sufficient factual specificity, to continue his confinement at SCC. Petersen appealed from that *1208 decision; his appeal is currently before us (Supreme Court Docket No. 63398-3).
Like the 1996 evaluation, Petersen's annual evaluation in 1997 concluded, in a report by staff clinical psychologist Dr. Regina Harrington, that Petersen continued to suffer from his previous conditions and he "has the propensity for and is still capable of perpetuating sexual aggression." Clerk's Papers at 14. The report stated: "At this time, this man remains an untreated sexual offender who is more likely than not to repeat violent and predatory sexual assaults if he were released to live freely in the community. I do not recommend his release at this time." Clerk's Papers at 15-16. Petersen offered no evidence to controvert Dr. Harrington's report. Based on this report and the absence of controverting evidence, the trial court subsequently held a hearing and found there was no probable cause to believe Petersen deserving of a full evidentiary hearing regarding the propriety of his release from commitment.
Petersen then filed a notice of appeal seeking direct review of the trial court's orders denying his motion to invalidate the annual report and to continue his commitment.[3] Our Deputy Clerk raised the question of whether Petersen was allowed an appeal as of right under the circumstances, or was limited to filing a motion for discretionary review. Our Commissioner subsequently heard the arguments of the parties on the question, and issued a ruling redesignating Petersen's notice of appeal as a motion for discretionary review. Petersen then moved to modify the Commissioner's ruling.
We initially issued an order requesting additional briefing on the issue of appellate review and then accepted the matter for oral argument, specifying as the issues on review (1) the proper avenue for invoking appellate court review, and (2) whether the trial court's decisions in Petersen's periodic review should be affirmed. Order of April 9, 1998.[4]

ANALYSIS
A. The Proper Method for Obtaining Appellate Review
1. Nature of Commitment Under RCW 71.09
To decide the proper method for invoking review of trial court decisions under RCW 71.09.090(2), we must first place decisions under chapter 71.09 RCW in a proper analytic context. Commitments under Washington's sexually violent predators act are civil in nature. In re Personal Restraint of Young, 122 Wash.2d 1, 23, 857 P.2d 989 (1993).[5] Moreover, such commitments are of an indefinite duration, persisting "until such time as the person's mental abnormality or personality disorder has so changed that the person is safe either (a) to be at large, or (b) to be released to a less restrictive alternative as set forth in RCW 71.09.092." RCW 71.09.060(1). The Legislature specifically found "the treatment needs of [the sexually violent predator] population are very long *1209 term," thereby implying the statute contemplates a prolonged period of treatment. RCW 71.09.010.
That the commitment was for an indefinite duration was specifically recognized by the majority in Young when we upheld the constitutionality of the statute, stating:
Even though petitioners potentially face a long period of civil commitment, the sexually violent predator Statute is wholly sustainable. Those committed under the sex predator Statute have been through a full trial with a complete range of procedural protections. From this trial, a jury has determined that the State has met the highest burden possiblebeyond a reasonable doubtin proving that the committed individual suffers from a mental abnormality which renders him a danger to the community. Although the period of confinement is not predetermined, the Statute's release provisions provide the opportunity for periodic review of the committed individual's current mental condition and continuing dangerousness to the community.
Young, 122 Wash.2d at 39, 857 P.2d 989 (emphasis added). Similarly, the dissent in Young recognized the indefinite duration of the commitment of sexually violent predators under the statute in several passages, describing the statute as providing for "indefinite" confinement. Young, 122 Wash.2d at 60, 65, 68, 70, 857 P.2d 989. The dissent even characterized the statute as "a lifetime preventive detention scheme," id. at 69, 70, 857 P.2d 989, and as a law that authorized the State "to hold that person forever for the `good of the community'." Id. at 61, 857 P.2d 989.
Petersen argues the statute does not provide for an indefinite period of commitment, but instead requires an annual de novo determination beyond a reasonable doubt that he is a sexually violent predator in order for his confinement to continue. We disagree. A plain reading of the statute does not support Petersen's contention. Nevertheless, he points to Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (upholding constitutionality of Kansas's sexually violent predator law), as authority. In Hendricks, the Court interpreted a sexually violent predator statute similar in many respects to Washington's and said:
Furthermore, commitment under the Act is only potentially indefinite. The maximum amount of time an individual can be incapacitated pursuant to a single judicial proceeding is one year. § 59-29a08. If Kansas seeks to continue the detention beyond that year, a court must once again determine beyond a reasonable doubt that the detainee satisfies the same standards as required for the initial confinement.
Hendricks, 117 S.Ct. at 2083. The Supreme Court is simply wrong about this. The Kansas statute contains no such requirement.[6] *1210 Even if the Supreme Court were not wrong, it was offering its interpretation of another state's statute, not prescribing any constitutional requirements.[7] In the absence of any constitutional issues, the Washington Supreme Court is the final arbiter of the meaning of Washington statutory law. Our sexually violent predator statute unequivocally contemplates an indefinite term of commitment, not a series of fixed one-year terms with continued commitment having to be justified beyond a reasonable doubt annually at evidentiary hearings where the State bears the burden of proof. If the latter is what the Legislature intended, it could have said so in plain language. We reject Petersen's attempt to rewrite the statute.
Washington's sexually violent predator law requires an evaluation of the committed person's mental condition at least once every year to determine suitability for release. RCW 71.09.070. Based on such evaluation, and if the secretary of DSHS so authorizes, the committed person may petition in superior court for release. RCW 71.09.090(1). Even if the secretary fails to authorize a petition, the committed person may still petition the superior court for release, as Petersen did in this case. RCW 71.09.090(2) states:
Nothing contained in this chapter shall prohibit the person from otherwise petitioning the court for conditional release to a less restrictive alternative or unconditional discharge without the secretary's approval.[8] The secretary shall provide the committed person with an annual written notice of the person's right to petition the court for conditional release to a less restrictive alternative or unconditional discharge over the secretary's objection. The *1211 notice shall contain a waiver of rights. The secretary shall forward the notice and waiver form to the court with the annual report. If the person does not affirmatively waive the right to petition, the court shall set a show cause hearing to determine whether facts exist that warrant a hearing on whether the person's condition has so changed that he or she is safe to be conditionally released to a less restrictive alternative or unconditionally discharged. The committed person shall have a right to have an attorney represent him or her at the show cause hearing but the person is not entitled to be present at the show cause hearing. If the court at the show cause hearing determines that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is not likely to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged, then the court shall set a hearing on the issue. At the hearing, the committed person shall be entitled to be present and to the benefit of all constitutional protections that were afforded to the person at the initial commitment proceeding. The prosecuting attorney or the attorney general if requested by the county shall represent the state and shall have a right to a jury trial and to have the committed person evaluated by experts chosen by the state. The committed person shall also have the right to have experts evaluate him or her on his or her behalf and the court shall appoint an expert if the person is indigent and requests an appointment. The burden of proof at the hearing shall be upon the state to prove beyond a reasonable doubt that the committed person's mental abnormality or personality disorder remains such that the person is likely to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged.
Thus, the statutory scheme of chapter 71.09 RCW provides for commitment of a sexually violent predator for an indefinite period, until that person's condition has changed sufficiently that he or she is safe to be either at large or in a less restrictive setting. The statute provides at least annually for reviews of the committed person's condition, but these annual reviews do not transmute a commitment of indefinite duration into a series of fixed, one-year commitments. Moreover, the show cause hearing called for in RCW 71.09.090(2) does not in itself provide a committed person any relief. It is a summary proceeding designed to determine if an evidentiary hearing on the merits as to the person's condition is warranted. Young, 122 Wash.2d at 43-47, 857 P.2d 989.
2. Appellate Review of Decisions Under RCW 71.09.090(2)
Petersen contends he is entitled to appeal as a matter of right from the trial court's probable cause decision under RCW 71.09.090(2). He notes RAP 2.2 lists 12 circumstances in which a party may appeal as of right as opposed to seeking discretionary review,[9] and asserts three of these apply to *1212 him. First, he argues RAP 2.2(a)(8) applies because the decision of the trial court's continuing commitment is "tantamount to orders of recommitment for another year." Opening Br. at 6. He asserts, "Without the right to direct appeal [he means here appeal as of right; direct appeal means an appeal directly to the Supreme Court without first appealing to the Court of Appeals] of any recommitment order, there is no way to [e]nsure that the statute is being fairly enforced." Id. at 6-7, 857 P.2d 989. Petersen does not say why requiring him to file a motion for discretionary review would prevent him from obtaining appellate review of his claimed trial court error and prevent fair enforcement of the sexually violent predator statute.[10] Next, Petersen argues RAP 2.2(a)(1) permits an appeal as of right from a "final judgment entered in any action or proceeding." He states baldly the trial court's order was a final judgment without offering any support for the proposition. Finally, Petersen argues RAP 2.2(a)(13) permits appeals as of right from "[a]ny final order made after judgment which affects a substantial right." Opening Br. at 7.
The State counters by arguing RAP 2.2 applies to initial orders of commitment or to orders of commitment issuing after a full hearing pursuant to RCW 71.09.090(2), but discretionary review pursuant to RAP 2.3(b)[11] governs the decision following the show cause hearing.
Upon a careful review of the nature of proceedings under chapter 71.09 RCW and our prior cases on appellate review, we believe RAP 2.3(b) governs review of Petersen's case here. At the outset, we note RAP 2.2(a)(8) applies to "Orders of Commitment" of persons under chapter 71.09 RCW. An order denying a petition for a show cause hearing is not an "order of commitment." When we promulgated an amendment to RAP 2.2(a)(8) in 1994 to add the words "or after a sexual predator hearing," we originally included the following comment by the drafter: "Because it can result in a person's indefinite confinement, there should clearly be a right to appeal the commitment order."[12] Thus, there can be no dispute our initial intent was to provide an appeal as of right only from the initial commitment order that followed the full evidentiary adjudication of an individual as a sexually violent predator. We did not conclude then an appeal as of right should attach to the subsequent, annual show cause hearings conducted for committed sexually violent predators. Petersen now urges we should have done so. We disagree.
In the show cause hearing under RCW 71.09.090(2), the trial court considers only whether there is probable cause to believe a committed person's condition has changed so that he or she is entitled to a full evidentiary hearing as to whether conditional or unconditional release from his commitment *1213 is warranted. If probable cause is not shown, the trial court denies the petition and commitment continues. If the trial court finds probable cause, it then sets a full evidentiary hearing where the mental status of the committed person is addressed on the merits.
At that full hearing, the court may find the person's condition has not changed; if so, the commitment continues. If the court finds the person's condition changed, less restrictive placement or release may follow. The statute, in fact, provides for continuing court jurisdiction over committed persons until their unconditioned release. RCW 71.09.090(3).
The show cause hearing is in the nature of a summary proceeding wherein the trial court makes a threshold determination of whether there is evidence amounting to probable cause to hold a full hearing. The show cause hearing is an expression of the Legislature's wish that judicial resources not be burdened annually with full evidentiary hearings for sexually violent predators absent at least some showing of probable cause to believe such a hearing is necessary.
RAP 2.2(a)(8) does not apply to Petersen's situation, as our interpretation of an analogous statutory scheme in In re Dependency of Chubb, 112 Wash.2d 719, 773 P.2d 851 (1989), reveals. Chubb addressed the question of appellate review of a dependency review hearing. The petitioner's children were found to be dependent. RAP 2.2(a)(5) provides specifically for appeal as a matter of right from a "disposition decision following a finding of dependency by a juvenile court." The juvenile dependency statute required review of the dependency status of children every six months to determine whether court supervision should continue. When the juvenile court determined after such a six-month review hearing that the dependency of petitioner's children should continue, she sought review as a matter of right. She contended each dependency review was "a reestablishment of the original dependency disposition," Chubb, 112 Wash.2d at 723, 773 P.2d 851, or, alternatively, was a final order subject to appeal. We disagreed.
Writing for the majority, Justice Utter rejected the first of Ms. Chubb's contentions, indicating continuation of the status quo was not the equivalent of a new disposition:
Petitioner's argument that the analysis of the Court of Appeals conflicts with existing precedent misconstrues that court's statement. The Court of Appeals held: "Dependency review orders entered pursuant to RCW 13.34.130(3) do not require that a finding of dependency be made at each review hearing and therefore they are not appealable under RAP 2.2(a)(5)." [In re Dependency of] Chubb II, 52 Wash.App. [541] at 543-44[, 762 P.2d 352 (1988) ]. This statement is consistent with our analysis. The juvenile court is not required to make the determination of dependency anew at each hearing. Its function is to determine whether court supervision should continue. Essentially, if this supervision is to continue, then what the juvenile court has decided is to abide by the status quo: the determination of dependency.
Chubb, 112 Wash.2d at 724, 773 P.2d 851. Moreover, we rejected a finality argument because of the continuing jurisdiction of the court over the dependent juveniles:
Contrary to Ms. Chubb's implication, dependency review orders are not final: former RCW 13.34.130(3) mandates that review hearings occur every 6 months after the original disposition. This review process continues until either the status quo changes and the court decides that its supervision should not continue or until a petition for termination is made. Because they take place in an ongoing process, the review hearings and the orders issued from them are interlocutory: they are not final, but await possible revision in the next hearing
....The language of RAP 2.2(a) and RCW 13.34.130 indicates that appeal by right applies only to the disposition decision following the finding of dependency or to a marked change in the status quo, which in effect amounts to a new disposition.
Id. at 724-25, 773 P.2d 851. We discern no principled distinction between our analysis in *1214 Chubb and the statutory scheme of chapter 71.09 RCW.[13]
Petersen also argues a trial court's probable cause decision under RCW 71.09.090(2) is a final judgment under RAP 2.2(a)(1). Again, we disagree. "A final judgment is a judgment that ends the litigation, leaving nothing for the court to do but execute the judgment." Anderson & Middleton Lumber Co. v. Quinault Indian Nation, 79 Wash.App. 221, 225, 901 P.2d 1060 (1995), aff'd, 130 Wash.2d 862, 929 P.2d 379 (1996). The statute provides for continuing court jurisdiction over committed persons until their unconditioned release. RCW 71.09.090(3). An adjudged sexually violent predator is therefore under the court's jurisdiction until unconditionally released. In view of the statutory declaration that the courts have continuing jurisdiction of committed sexually violent predators, the order in this case cannot be a final judgment.
Despite Petersen's contention, RAP 2.2(a)(13), which allows appeal from any final order made after judgment affecting a substantial right, is inapplicable to Petersen's situation. A decision under RCW 71.09.090(2) finding no probable cause is not a final order after judgment in light of the court's continuing jurisdiction over the committed persons until their unconditional release. RCW 71.09.090(3). It disposes only of the petition before the trial court and achieves no final disposition of the sexually violent predator. The dissent's assertion that "[t]he order at issue here ended the pending petition, and ended it finally," Dissent at 1219, does not advance the argument because it is still an interlocutory order.
Although Petersen does not argue requiring him to appeal by moving for discretionary review deprives him of due process, implicit in his argument is the view that a motion for discretionary review affords him less process than he would otherwise obtain in an appeal as of right. Essentially, Petersen claims a motion for discretionary review provides him with an inferior process for seeking review of a trial court's decision.
We decline to adopt such a view because as a practical matter, for meritorious claims, the discretionary review screening should present no great obstacle to obtaining review by an appellate court under RAP 2.3(b). A party seeking discretionary review has potentially four levels of scrutiny. First, a commissioner at the Court of Appeals may rule on the motion. The movant may move to modify an adverse ruling, triggering scrutiny by a panel of judges. RAP 17.7. "An appellant who makes a motion to modify pursuant to RAP 17.7 receives, as a matter of right, de novo review of the commissioner's ruling by a 3-judge panel." State v. Rolax, 104 Wash.2d 129, 133, 702 P.2d 1185 (1985). If the panel affirms the ruling denying discretionary review, the movant may seek discretionary review of that interlocutory decision in the Supreme Court pursuant to RAP 13.5. Here, the Commissioner makes a ruling, which again is subject to a motion to modify and scrutiny by the justices. In Rolax, we considered the propriety, in the criminal context, of the dismissal of an appeal by a motion on the merits made under RAP 18.14, which provides for disposition of appeals on a motion to a judge or commissioner subject to a motion to modify under RAP 17.7 heard by a full panel of the appellate court. The petitioners in Rolax argued the motion on the merits procedure denied their constitutional right to appeal. We rejected the argument, quoting Seattle v. Filson, 98 Wash.2d 66, 73, 653 P.2d 608 (1982):
We are shown no language in the constitution perpetuating procedures on appeal as they existed at the time of its adoption. Const. art. 1, § 22 guarantees the right of appeal in all criminal cases, but no mention is made of the procedure to be followed on such an appeal. *1215 Rolax, 104 Wash.2d at 133, 702 P.2d 1185. We found in Rolax no derogation in the motion on the merits procedure of a convicted criminal's constitutional right to appeal, in large part because "full appellate review by the court requires only a defendant's motion to modify." Id. at 136-37, 702 P.2d 1185. Here, where there is no constitutional right to appeal because commitment as a sexually violent predator is a civil proceeding, the reasoning in Rolax applies with at least equal force.
In summary, the discretionary procedures of the Rules of Appellate Procedure afford appropriate process to those subject to their requirements. We hold review of the decisions in hearings held pursuant to RCW 71.09.090(2) will be determined under the provisions of RAP 2.3(b).
B. Validity of the Annual Evaluation
In our Order setting this case for oral argument, we decided to address the merits of Petersen's claim that his 1997 evaluation by the clinical psychologist must be invalidated. The Secretary of DSHS failed to conclude Petersen's mental status had changed enough to petition the court for his conditional release to a less restrictive alternative or unconditional discharge. RCW 71.90.090(1). The Secretary notified Petersen under RCW 71.09.090(2), however, that unless Petersen waived it, a show cause hearing would take place anyway "to determine whether facts exist that warrant a hearing on whether [Petersen's] condition has so changed that he... is safe to be conditionally released to a less restrictive alternative or unconditionally discharged." Because the clinical psychologist's report recommended no change in Peterson's status, Petersen had the statutorily-imposed burden of showing "facts exist" to both controvert the psychologist's conclusion and demonstrate probable cause for a further hearing.
Petersen presented no evidence whatsoever at the show cause hearing. All he did was move the trial court to invalidate the clinical psychologist's report solely on the grounds the reporting clinical psychologist did not personally interview him. Even if we were to hold the psychologist's report was invalid, we would still be compelled to uphold the trial court's decision finding no probable cause, insofar as Petersen presented no affirmative evidence tending to show that "facts exist" to justify a full evidentiary hearing. Nevertheless, we will examine the merits of Petersen's claims now because of their novelty.
The clinical psychologist did not interview him because Petersen had insisted his counsel be present during the interview, and it was contrary to the SCC policy to permit counsel to be present during personal psychological evaluations of committed persons.[14] The trial court denied Petersen's motion to invalidate the annual report.
Petersen now asserts the 1997 evaluation was invalid because he did not consent to be interviewed by the psychologist who prepared the report on which the evaluation was made unless his counsel were present. Petersen is not now complaining about the substantive conclusions of the 1997 report or of the trial court's decision to keep him committed. He apparently now seeks a declaration by this Court requiring the presence of counsel during psychological evaluations of committed sexually violent predators.[15] He makes three arguments.
First, he argues in vague terms due process principles afford him the right to counsel at the personal interview, and the absence of counsel somehow invalidates the evaluation. We disagree. Petersen has no Fifth Amendment constitutional right to counsel during annual psychological evaluations because proceedings under chapter 71.09 RCW are civil, not criminal, Young, 122 Wash.2d at 23, 857 P.2d 989, and he is in no danger of incriminating himself. He has no *1216 Sixth Amendment right to "assistance of counsel" because the personal interview by a psychologist is not a "criminal prosecution." U.S. CONST. amend. VI. Thus, whatever constitutional right he may have to counsel during the psychological evaluation must flow from considerations of fundamental fairness. That is, it is possible to postulate that a biased or negligent psychologist in the employ of the State may conduct a tendentious or careless examination and reach an unsupportable or incorrect conclusion about Petersen's fitness for release. Any concerns about such an interview, however, are wholly cured by Petersen's statutory right to have experts evaluate him and testify on his behalf, and the right to have the court appoint an expert if he can prove indigency. Petersen has not availed himself of his right to present expert evidence to rebut the evaluation by the State's psychologist. Thus, neither specific constitutional mandates nor fundamental fairness requires the presence of an attorney at the annual psychological evaluation.
Second, Petersen notes RCW 71.09.050(1) provides, "At all stages of the proceedings under this chapter, any person subject to this chapter shall be entitled to the assistance of counsel." This language, by referring to "all stages of the proceedings," rather than just to "proceedings," seems broad enough to include the annual evaluations.
But the Legislature created the right to counsel only as to all stages leading to the initial trial of whether the person is a sexually violent predator, and not to further proceedings. RCW 71.09.050(1) is entitled "TrialRights of parties," and discusses pretrial discovery procedures in addition to providing the right to counsel. Later, in RCW 71.09.090(2), the Legislature created another statutory right to counsel when a committed person petitions for release or less onerous confinement. If RCW 71.09.050(1) truly represents the overarching statutory grant of the right to counsel at all stages of all proceedings under the entire chapter, the grant of the right to counsel in the latter section is surplusage. Under the usual rule of statutory construction, "[c]ourts should not construe statutes to render any language superfluous." State v. Riles, 135 Wash.2d 326, 340, 957 P.2d 655 (1998). Thus, in the absence of a constitutional right or a clear declaration from the Legislature, a committed person is not entitled to counsel during the annual evaluations.
Finally, Petersen suggests he is entitled to the same treatment, i.e., presence of an attorney at a psychological evaluation, as those committed under chapter 71.05 RCW on equal protection grounds. He offers no argument and cites no law to support his suggestion.
We have indeed looked to the situation of persons subject to mental health commitment to evaluate state and federal constitutional concerns that persons similarly situated receive like treatment. Young, 122 Wash.2d at 44, 857 P.2d 989. There, we noted the purposes of chapter 71.09 RCWincapacitation and treatment of sexually violent predators in considering the propriety of procedures under the act. The procedures dealing with sexually violent predators need not mirror the procedures of chapter 71.05 RCW, given the different treatment needs of the populations subject to those acts. In Young, we stated:
It is important to note at the outset that there are good reasons to treat mentally ill people differently than violent sex offenders. See People v. Pembrock, 62 Ill.2d 317, 322, 342 N.E.2d 28 (1976) (A sexually dangerous person "creates different societal problems, and his past conduct is different in degree and kind from the conduct of persons in the larger, more inclusive class defined under the Mental Health Code".). Sexually violent predators are generally considerably more dangerous to others than the mentally ill. Treatment methods are also markedly different for the two populations. See RCW 71.09.010. Nevertheless, these distinctions between the two groups must be related to any differences in treatment under the respective statutes. That is, "[e]qual protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made". Baxstrom v. Herold, 383 U.S. 107, 111, 15 L.Ed.2d 620, 86 S.Ct. 760[, 763] (1966).

*1217 The Supreme Court has said that the dangerousness of the detainee "may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given, but it has no relevance whatever in the context of the opportunity to show whether a person is mentally ill at all." (Some italics ours.) Baxstrom, at 111[, 86 S.Ct. at 763].
Young, 122 Wash.2d at 44-45, 857 P.2d 989.
Young controls. Petersen fails to demonstrate he is similarly situated to persons committed under chapter 71.05 RCW. His commitment has already been determined and is continuing, while the entitlement under chapter 71.05 RCW is in effect during the evaluation for the initial commitment. Moreover, Petersen has been under careful observation by the SCC staff during the entire year prior to his evaluation. A personal interview is not as crucial under these circumstances as the interview by the county designated mental health professional under RCW 71.05.150(1)(a). That county professional may never have seen the person before in making the evaluation. There is a rational basis for differentiating between sexually violent predators under chapter 71.09 RCW and the mentally ill under chapter 71.05 RCW. In summary, we reject all three of Petersen's arguments and hold a committed sexually violent predator is not entitled to the presence of counsel during psychological evaluations under state or constitutional law.
As a final matter, Petersen contends his 1997 evaluation by Dr. Regina Harrington was invalid because she did not interview or examine him personally.[16] He does not contend the evaluation was invalid under ER 702., but implies a psychological evaluation is not valid unless the subject has been personally interviewed or examined by the evaluator. Petersen's support for his contention is a statute from Washington's involuntary treatment act for the mentally ill, chapter 71.05 RCW. Under that chapter, before a petition for commitment of a mentally ill person may be filed, "the county designated mental health professional must personally interview the person." RCW 71.05.150(1)(a). No such requirement appears in the chapter on sexually violent predators, so Petersen's argument on statutory grounds fails.
In summary, Petersen has failed to demonstrate his 1997 evaluation was invalid either because the evaluator did not examine him personally, or because he was denied the presence of counsel at the examination.

CONCLUSION
In light of the nature of the show cause hearing required by RCW 71.09.090(2), we hold an appellate court reviews the annual decision regarding change in a committed sexually violent predator's condition under the provisions of RAP 2.3(b). With respect to the merits of Petersen's claim, we affirm the trial court's ruling that Petersen did not establish probable cause to believe his condition had changed.
GUY, C.J., DURHAM, ALEXANDER, JJ., and DOLLIVER, J.P.T., concur.
*1218 SANDERS, J. (dissenting).
The majority consigns Mr. Petersen to indefinite imprisonment without benefit of appeal or right to counsel. It claims the civil nature of his incarceration diminishes his rights below those enjoyed by convicted criminals. It holds the United States Supreme Court's interpretation of a similar statute is "simply wrong." Majority at 1209. It states the legislature's guarantee of the right to counsel "[a]t all stages of the proceedings" does not mean what it says and that there is no constitutional right to counsel for one potentially deprived of his liberty in a civil proceeding. RCW 71.09.050(1) (Majority at 1215-1216).
A. Order on annual review is appealable as a matter of right.
Whatever rights may be truly fundamental to the rule of law in a free society, the right to appeal must surely rank among them.[1] Our rules protect the right to access the appellate courts without regard to whether we characterize the proceeding civil or criminal. RAP 2.2.
Not every order may be appealed as a matter of right; however, no person may be barred appellate access to contest a final order affecting his substantial rights. RAP 2.2(a)(13). Notwithstanding the majority's claim to the contrary, this case is most certainly "about the right to appeal itself." Majority at 1212 n.10. The opportunity to seek discretionary review is no substitute for appeal as a matter of right because discretionary review, absent the favorable exercise of discretion, is no review at all. Such is contingent on surmounting a discretionary threshold, usually on the assumption that a truly appealable order will follow, not that it will never follow.[2] RAP 2.3(b). To limit appellate access to discretionary review under these circumstances is to abrogate, that which each citizen has heretofore justly claimed by right.
RAP 2.2(a)(13) expressly provides, "Any final order made after judgment which affects a substantial right" is appealable as a matter of right. The issue here is therefore whether the annual review provisions outlined in RCW 71.09.090 invite a "final order" "after judgment" which "affects a substantial right." Such questions of appealability are answered by applying substance over form. Alpine Indus., Inc. v. Gohl, 101 Wash.2d 252, 255, 676 P.2d 488 (1984).
The majority, without meaningful analysis, denies an appeal of right under this section within the space of two sentences asserting the court has "continuing jurisdiction," citing RCW 71.09.090(3). Majority at 1214. While this court's jurisdiction may "continue," that jurisdiction is only invoked by a petition for release. The court is not authorized to free the prisoner absent a statutory petition. "Continuing jurisdiction" is therefore not incompatible with the requirements of RAP 2.2(13).
In satisfaction of the rule's criteria, even the state admits this is an "order made after judgment," since an order entered in an *1219 annual review proceeding is an order entered after an individual was initially imprisoned as a result of a prior final judgment entered pursuant to RCW 71.09.060(1) that he is "a sexually violent predator." The order on annual review may result from a hearing conducted on a petition filed by the state pursuant to RCW 71.09.090(1) (seeking a conditional release to less restrictive alternative or unconditional discharge), or it may result from a petition filed by the prisoner himself for such relief under subsection (2) of the same statute.[3] That subsection provides,
The secretary shall provide the committed person with an annual written notice of the person's right to petition the court for conditional release to a less restrictive alternative or unconditional discharge over the secretary's objection.
RCW 71.09.090(2).
And the order is also "final." This must be so because the court's order on the petitionwhether it be an order on show cause which denies a full hearing based upon the court's determination that probable cause does not exist for success, or an order for continued imprisonment, release, or a less restrictive alternative entered after a full hearingis, by operation of law, "final" in the sense that it determines whether the prisoner will be released at that point in time or not. It is also "final" because there is nothing else to be done to arrive at the ultimate disposition of the petition, unless the order to show cause is issued in which event finality awaits the hearing's disposition. A subsequent petition will begin the process again; however, a subsequent petition stands separate, apart, and independent of that petition which preceded it. The order at issue here ended the pending petition, and ended it finally. Although a subsequent petition might result in an order of release, that order is not in any sense a result or culmination of the previously dismissed petition but rather an entirely new order based on an entirely separate proceeding.
The majority also claims an order on annual review is "interlocutory," Majority at 1214, asserting it is therefore not appealable of right. However, an interlocutory decision is "[a]ny decision prior to a final decision," Black's Law Dictionary 815 (6th ed.1990), whereas an order on annual review cannot be "interlocutory" because there is no decision which it necessarily precedes. See Balfour-Guthrie Inv. Co. v. Geiger, 20 Wash. 579, 580, 56 P. 370 (1899), and see Alwood v. Aukeen Dist. Court, 94 Wash.App. 396, 973 P.2d 12, 14 (1999). Even the majority recognizes the finality implicit in the termination of an annual review proceeding as it argues in another context that an improper psychological evaluation for the purpose of one annual review cannot be the basis for granting relief in a subsequent annual review. Majority at 1215 n.15 ("A `new' 1997 evaluation would obviously be moot. The Court can grant no relief to Petersen now for what happened in 1997.").
Most importantly an order entered in the review proceeding is an adjudication of the prisoner's right to be released based upon his current mental condition at the time of the review proceeding, as distinguished from the initial adjudication which was premised upon his mental status at the time of the original final judgment of commitment. It is therefore a "final order made after judgment" because "it affects a right other than those adjudicated by the earlier final judgment." State v. Campbell, 112 Wash.2d 186, 190, 770 P.2d 620 (1989) (death warrant not separately appealable because it affects the same right already adjudicated in the underlying judgment). The constitutional necessity for such a review proceeding to assess the current mental status of the prisoner is discussed in greater detail below; however, it is clear an order on the review petition is a *1220 "final order made after judgment," fulfilling that portion of the rule. RAP 2.2(a)(13).
The final aspect of the rule requires the order "affect[] a substantial right." Although the majority discounts the liberty of every individual to be free from unlawful imprisonment, gratefully the statute and the Constitution are more generous.
If the purpose of this statute is the protection of society from sexually violent offenders as well as the treatment and cure of those individuals so as to render them safe for release, In re Personal Restraint of Young, 122 Wash.2d 1, 10, 857 P.2d 989 (1993), certainly it cannot be argued its statutory purpose is advanced by continued incarceration of those who are no longer dangerous as a result of this alleged mental condition. The statutory review provisions at issue in this proceeding facilitate this purpose by providing:
If the court at the show cause hearing determines that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is not likely to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged, then the court shall set a hearing on the issue.
RCW 71.09.090(2). This provision is in accord with the constitutional mandate that one who is confined on mental illness grounds "may be held as long as he is both mentally ill and dangerous, but no longer." Foucha v. Louisiana, 504 U.S. 71, 77, 112 S.Ct. 1780, 1784, 118 L.Ed.2d 437 (1992) (citing Jones v. United States, 463 U.S. 354, 368, 103 S.Ct. 3043, 3052, 77 L.Ed.2d 694 (1983) and O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975)).
The right to release after recovery, as opposed to endless, needless confinement, is especially important as the United States Supreme Court has reaffirmed, "`[t]he loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement,'" Foucha, 504 U.S. at 79, 112 S.Ct. at 1785 (quoting Vitek v. Jones, 445 U.S. 480, 492, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980)); whereas even confinement under civil commitment statutes less onerous than this is a "`massive curtailment of liberty'" entitling the imprisoned to the full scope of constitutional protections. State ex rel. T.B. v. CPC Fairfax Hosp., 129 Wash.2d 439, 452, 918 P.2d 497 (1996) (quoting Humphrey v. Cady, 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1972)).
The presence of the annual review provision therefore serves a special function with respect to the constitutionality of this statute as a whole. Although we originally upheld the constitutionality of the statute against facial challenge in In re Young, we did so only upon recognition that "[a]n individual's liberty interest is important and fundamental," 122 Wash.2d at 26, 857 P.2d 989, thereby requiring the statute to pass the test of strict scrutiny by forcing the state to prove the statute not only "furthers compelling state interests," but also is "narrowly drawn to serve those interests." Id.
Finding the statute, at least on its face, passes constitutional muster we emphasized the requirement of Jones that due process "`requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.'" In re Young, 122 Wash.2d at 33, 857 P.2d 989 (quoting Jones v. United States, 463 U.S. at 368, 103 S.Ct. 3043). And we cautioned such a statute survives the meritorious challenge against indefinite commitment sustained in Foucha only because "[a]llthough the period of confinement is not predetermined, the statute's release provisions provide the opportunity for periodic review of the committed individual's current mental condition and continuing dangerousness to the community." In re Young, 122 Wash.2d at 39, 857 P.2d 989.
These concerns were echoed, if not enlarged upon, by the United States Supreme Court several years later when it upheld a comparable Kansas statute against facial attack in Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), if only by the slimmest of margins in a five to four decision. There the Supreme Court upheld the constitutional validity of a similar statute by rejecting claims it imposed criminal punishment contrary to the double jeopardy *1221 and ex post facto clauses of the United States Constitution. Supporting his claim of unconstitutionality "Hendricks focus[ed] on his confinement's potentially indefinite duration as evidence of the State's punitive intent," 117 S.Ct. at 2083; however, relying on the same annual review provisions at issue here, the Supreme Court held:
Furthermore, commitment under the Act is only potentially indefinite. The maximum amount of time an individual can be incapacitated pursuant to a single judicial proceeding is one year. If Kansas seeks to continue the detention beyond that year, a court must once again determine beyond a reasonable doubt that the detainee satisfies the same standards as required for the initial confinement. This requirement again demonstrates that Kansas does not intend an individual committed pursuant to the Act to remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness.
Id. (citations omitted).
Says our majority, however, the Supreme Court "is simply wrong" (Majority at 1209) to reject the claim that the identical Kansas statute provided for an indefinite term of commitment, suggesting "it was offering its interpretation of another state's statute, not prescribing any constitutional requirements." Majority at 1210.
But I fear our majority has missed the point: Were the commitment truly indefinite, as our majority claims, the statute would be so punitive it could not survive constitutional challenge as per Hendricks. Indeed it seems our majority goes out of its way to punish once again for past crimes, and in advance of speculative future ones.
But however the majority may characterize it, the statutory language speaks with a force all its own: A prisoner is entitled to at least an annual review with a commensurate opportunity to regain his freedom. Even if we were to agree with the state that "[t]he only substantial right Petersen can identify is his continuing commitment," State's Response Br. at 22, that right is not only substantial, but constitutionally indispensable.
Indeed we have recognized "substantial rights" in situations much less compelling than this. For example a trial court's ruling on an application for leave to file a second new trial motion pursuant to CR 59(j), after a previous motion for new trial was denied, affects a substantial right and is therefore appealable as a matter of right. Alpine Indus., Inc. v. Gohl, 101 Wash.2d 252, 676 P.2d 488 (1984). Similarly, our Court of Appeals has held that an order removing a personal representative is appealable of right as a decision affecting substantial rights. In re Estate of Wood, 88 Wash.App. 973, 975, 947 P.2d 782 (1997). And our rule has been construed to allow an appeal as a matter of right from even an order revoking probation after final judgment, as that too involves a substantial right. State v. Pilon, 23 Wash. App. 609, 611-12, 596 P.2d 664 (1979). Additionally, was not the jurisdiction of the court "continuing" in many of those very situations where the right to appeal has been vindicated?
I venture it is quite apparent from the statutory structure that this unique annual review proceeding is (1) mandatory and (2) presents a clear opportunity for the incarcerated to regain his freedom. Its outcome "affects a substantial right" because it creates a plain and clear legal remedy (freedom or continued incarceration) which is anything but insubstantial from any standpoint.
In re Dependency of Chubb, 112 Wash.2d 719, 773 P.2d 851 (1989), is relied upon by the majority to support its claim that the order is not appealable under a wholly different subsection of the rule pertaining to an order of commitment after a dependency or sexual predator hearing. RAP 2.2(a)(8). While I agree the order may not be appealable under that subsection of the rule, neither Chubb nor the subpart of the rule under which it was decided supports the majority's claim that our intent upon adopting that subsection "was to provide an appeal as of right only from the initial commitment order" (Majority at 1212) (emphasis added) to the exclusion of other criteria independently rendering an order appealable. Chubb did not pertain to substantiality and is easily distinguished from the question presented under subsection *1222 (13). It spoke to the application of RAP 2.2(a)(5), which allows a direct appeal from a "disposition decision following a finding of dependency by a juvenile court," Chubb, 112 Wash.2d at 722, 773 P.2d 851, not subsection (13) of the rule which makes appealable "[a]ny final order made after judgment which affects a substantial right."
Persuasive also is the virtual unanimity of authority from other jurisdictions upholding the appealability of orders entered under similar, if not identical, statutes. People v. Herrera, 78 Cal.Rptr.2d 531, 66 Cal.App. 4th 1149 (1998), for example, squarely rejected the identical argument when raised by the California Attorney General that an order entered under an identical annual review provision is not appealable as a matter of right. Based upon nearly identical[4] provisions of the California Penal Code to Washington's RAP 2.2(a)(13), permitting appeals "`[f]rom any order made after judgment, affecting the substantial rights of the party,'" (quoting Cal.Penal Code § 1237(b)), the California appellate court squarely held: "The trial court's summary denial of a petition for outpatient status affects appellant's substantial rights and is an appealable order." Herrera, 78 Cal.Rptr.2d at 532, 66 Cal. App.4th 1149. See also In re Wyatt, 428 Mass. 347, 701 N.E.2d 337 (1998) (order on petition to be discharged from custody as a sexually dangerous person is appealable); In re Hill, 422 Mass. 147, 661 N.E.2d 1285 (1996) (same); In re Commitment of Paulick, 213 Wis.2d 432, 570 N.W.2d 626 (1997) (same); People v. Parrish, 879 P.2d 453 (Colo.App.1994) (same).
We should therefore recognize an order entered on a review proceeding is indeed a final order after judgment which affects a substantial right. In fact, second only to life itself, liberty is the most substantial right we haveour freedom from unlawful incarceration.
B. Right to an attorney at an annual examination.
Mr. Petersen also claims that his right to an annual examination was abridged by the state's refusal to allow him to be accompanied by his attorney. He relies upon RCW 71.09.070 which provides in part:
Each person committed under this chapter shall have a current examination of his or her mental condition made at least once every year.
This, claims Petersen, should be read in para materia with RCW 71.09.050(1) which provides in part:
At all stages of the proceedings under this chapter, any person subject to this chapter shall be entitled to the assistance of counsel.
and 71.09.080(1) which mandates:
Any person subjected to restricted liberty as a sexually violent predator pursuant to this chapter shall not forfeit any legal right or suffer any legal disability as a consequence of any actions taken or orders made, other than as specifically provided in this chapter.
At issue is the report from Regina M. Harrington, Ph.D., of May 6, 1997. Mr. Petersen apparently desired to participate in an annual forensic examination; however, according to the psychologist's report:
Mr. Petersen stated he would not agree to an interview for the annual review process without his attorney present. Clinical meetings are not conducted with legal counsel in attendance.
Clerk's Papers (CP) at 10. Dr. Harrington does not favor us, however, with any clinical justification, much less a legal one, for her practice of refusing the attendance of legal counsel.[5]
*1223 The majority's claim[6] that "the Legislature created the right to counsel only as to all stages leading to the initial trial" (Majority at 1216) but not thereafter defies the plain language of the statute which references the right to counsel "[a]t all stages of the proceedings under this chapter...." RCW 71.09.050(1). The right to a current examination is also a right "under this chapter." RCW 71.09.070. "[I]f a statute is plain and unambiguous, its meaning must be derived from the language of the statute itself." Harmon v. Department of Soc. & Health Servs., 134 Wash.2d 523, 530, 951 P.2d 770 (1998). Therefore the majority's attempt to construe the right out of existence by claiming the perhaps redundant guarantee of an attorney in RCW 71.09.090(2) is "surplusage" (Majority at 1216) may not defeat the plain words of the statute. We should not strain to deny this man legal assistance.
Citing Young, 122 Wash.2d at 23, 857 P.2d 989, the majority also claims, "Petersen has no Fifth Amendment constitutional right to counsel during annual psychological evaluations because proceedings under chapter 71.09 RCW are civil, not criminal." Majority at 1215. The majority errs. Young merely says such proceedings are civil but makes no reference to the constitutional right to counsel in a civil proceeding. Clearly, there is a constitutional right to counsel in even civil proceedings where liberty is at stake. See, e.g., Tetro v. Tetro, 86 Wash.2d 252, 253, 544 P.2d 17 (1975) ("In proceedings civil in form but criminal in naturesuch as juvenile delinquency or mental commitment hearings representation is clearly part of due process." (citing In re Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Heryford v. Parker, 396 F.2d 393 (10th Cir. 1968); and Lessard v. Schmidt, 349 F.Supp. 1078 (E.D.Wis.1972), vacated on other grounds by 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974))).
Stigmatizing labels such as "predator" must not be allowed to defeat the precious right to access appellate courts and obtain representation of counsel in matters involving personal liberty. The court must look behind the label to protect the rights of its citizens. For these reasons I dissent.
JOHNSON, SMITH and MADSEN, JJ., concur.
NOTES
[1] "`Sexually violent predator' means any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(1). See generally In re Personal Restraint of Young, 122 Wash.2d 1, 857 P.2d 989 (1993).
[2] Paraphilia is described in Young, 122 Wash.2d at 29-30, 857 P.2d 989.
[3] Petersen filed his notice of appeal in the Supreme Court two days after he filed it in the superior court, but did not comply with RAP 4.2, which sets out six allowable grounds for seeking direct review in this Court. Petersen did not file a statement of grounds for seeking direct review within 15 days after filing the notice. RAP 4.2(b). While we could dismiss Petersen's case for this non-compliance, we will review it because he has presented a policy issue of public importance and because judicial economy dictates our reaching the merits. We do not condone such noncompliance with the Rules of Appellate Procedure and note that unlike the rule in capital cases, RAP 4.2(a)(6), there is no categorical requirement under chapter 71.09 RCW for direct review.
[4] Petersen had a further annual review in 1998. The State presented the uncontroverted testimony of an expert from SCC that Petersen's condition had not changed. Petersen presented no expert testimony on his own behalf. The trial court found no probable cause to believe Petersen's condition had changed and his commitment continued. Petersen appealed from this decision as well (Supreme Court Docket No. 67016-1).
[5] The dissent errs because it treats Petersen's commitment as criminal in nature. Dissent at 1218 n. 1 and passim. Curiously, at n. 1 the dissent cites Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914), overruled by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961), a case that has nothing at all to do with the right to appeal a trial court's decision.
[6] KAN. STAT. ANN. § 59-29a08 (1994) provides:

Each person committed under this act shall have a current examination of the person's mental condition made once every year. The person may retain, or if the person is indigent and so requests the court may appoint a qualified professional person to examine such person, and such expert or professional person shall have access to all records concerning the person. The yearly report shall be provided to the court that committed the person under this act. The court shall conduct an annual review of the status of the committed person. Nothing contained in this act shall prohibit the person from otherwise petitioning the court for discharge at this hearing. The secretary of the department of social and rehabilitation services shall provide the committed person with an annual written notice of the person's right to petition the court for release over the secretary's objection. The notice shall contain a waiver of rights. The secretary shall forward the notice and waiver form to the court with the annual report. The committed person shall have a right to have an attorney represent the person at the hearing but the person is not entitled to be present at the hearing. If the court at the hearing determines that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be at large and will not engage in acts of sexual violence if discharged, then the court shall set a hearing on the issue. At the hearing, the committed person shall be entitled to be present and entitled to the benefit of all constitutional protections that were afforded the person at the initial commitment proceeding. The attorney general shall represent the state and shall have a right to a jury trial and to have the committed person evaluated by experts chosen by the state. The committed person shall also have the right to have experts evaluate the person on the person's behalf and the court shall appoint an expert if the person is indigent and requests an appointment. The burden of proof at the hearing shall be upon the state to prove beyond a reasonable doubt that the committed person's mental abnormality or personality disorder remains such that the person is not safe to be at large and if released is likely to engage in acts of sexual violence.
The dissent claims the Supreme Court upheld a "facial attack" against the Kansas statute "only by the slimmest of margins," Dissent at 1220, thereby creating the erroneous impression the State's constitutional authority to confine sexually violent predators is still a close question in the United States Supreme Court. The opposite is true. The dissent in Hendricks grounded its position on the Kansas statute's failure to provide treatment for Hendricks. Hendricks, 117 S.Ct. at 2087, 2098 (Breyer, J., dissenting). Justice Breyer said at the outset of his dissent, "I begin with the area of agreement. This Court has held that the civil commitment of a `mentally ill' and `dangerous' person does not automatically violate the Due Process Clause provided that the commitment takes place pursuant to proper procedures and evidentiary standards." Id. at 2088 (Breyer, J., dissenting). Justice Kennedy stated in his concurrence, "As all Members of the Court seem to agree, then, the power of the state to confine persons who, by reason of a mental disease or mental abnormality, constitute a real, continuing, and serious danger to society is well established." Id. at 2087 (Kennedy, J., concurring).
[7] Washington's show cause hearing in RCW 71.09.090(2) does not transform the statute into one providing for one year commitments, as Justice Kennedy's concurring opinion construing the identical provision in the Kansas statute made clear:

The Kansas law, with its attendant protections, including yearly review and review at any time at the instance of the person confined, is within this pattern and tradition of civil confinement. In this case, the mental abnormality pedophiliais at least described in the DSM-IV. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 524-525, 527-528 (4th ed.1994).
Notwithstanding its civil attributes, the practical effect of the Kansas law may be to impose confinement for life. At this stage of medical knowledge, although future treatments cannot be predicted, psychiatrists or other professionals engaged in treating pedophilia may be reluctant to find measurable success in treatment even after a long period and may be unable to predict that no serious danger will come from release of the detainee.
Hendricks, 117 S.Ct. at 2087. The term of commitment under Washington's statute is potentially indefinite because it depends on the cure or elimination of the person's sexually violent predilections.
[8] The statute does not limit committed persons to only one petition per year. Whenever "facts exist that warrant a hearing on whether the person's condition has so changed that he or she is safe to be conditionally released to a less restrictive alternative or unconditionally discharged," the committed person may petition for a hearing. Justice Kennedy's reading of the textually similar Kansas statute agrees: "The Kansas law, with its attendant protections, including yearly review and review at any time at the instance of the person confined, is within this pattern and tradition of civil confinement." Hendricks, 117 S.Ct. at 2087 (Kennedy, J., concurring) (emphasis added).
[9] RAP 2.2 provides in part:

(a) Generally. Unless otherwise prohibited by statute or court rule and except as provided in sections (b) and (c), a party may appeal from only the following superior court decisions:
(1) Final Judgment. The final judgment entered in any action or proceeding.
(2) [Reserved.]
(3) Decision Determining Action. Any written decision affecting a substantial right in a civil case which in effect determines the action and prevents a final judgment or discontinues the action.
(4) Order of Public Use and Necessity. An order of public use and necessity in a condemnation case.
(5) Juvenile Court Disposition. The disposition decision following a finding of dependency by a juvenile court, or a disposition decision following a finding of guilt in a juvenile offense proceeding.
(6) Deprivation of All Parental Rights. A decision depriving a person of all parental rights with respect to a child.
(7) Order of Incompetency. A decision declaring an adult legally incompetent, or an order establishing a conservatorship or guardianship for an adult.
(8) Order of Commitment. A decision ordering commitment, entered after a sanity hearing or after a sexual predator hearing.
(9) Order on Motion for New Trial or Amendment of Judgment. An order granting or denying a motion for new trial or amendment of judgment.
(10) Order on Motion for Vacation of Judgment. An order granting or denying a motion to vacate a judgment.
(11) Order on Motion for Arrest of Judgment. An order arresting or denying arrest of a judgment in a criminal case.
(12) Order Denying Motion to Vacate Order of Arrest of a Person. An order denying a motion to vacate an order of arrest of a person in a civil case.
(13) Final Order After Judgment. Any final order made after judgment which affects a substantial right.
[10] The dissent likewise fails to note this case is not about the right to appeal itself, but concerns only the proper procedure for invoking appellate review. Dissent at 1218 (Petersen is "without benefit of appeal").
[11] RAP 2.3(b) states:

(b) Considerations Governing Acceptance of Review. Except as provided in section (d), discretionary review will be accepted only:
(1) If the superior court has committed an obvious error which would render further proceedings useless; or
(2) If the superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act; or
(3) If the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court.
[12] 2 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE 497-98 (1997).
[13] Arguably, although we do not now so decide, review of decisions made after a full hearing on the merits under RCW 71.09.090(2) would be reviewable as of right. Such hearings appear to be equivalent to whole new trials with the same procedural protections as the initial commitment trial. The State must again prove Petersen to be a sexually violent predator beyond a reasonable doubt. If the jury at that hearing would so find, the predator's continuing commitment would flow from this new, subsequent determination, rather than from the original order of commitment, for purposes of RAP 2.2(a)(8).
[14] The clinical psychologist said in her report: "Mr. Petersen stated that he would not agree to an interview for the annual review process without his attorney present. Clinical meetings are not conducted with legal counsel in attendance." Clerk's Papers at 10.
[15] A "new" 1997 evaluation would obviously be moot. The Court can grant no relief to Petersen now for what happened in 1997.
[16] Petersen might have argued a psychological evaluation purporting to depict his current mental condition cannot be valid in the absence of a personal examination by the evaluator, but he has not produced any statement from a mental health professional so attesting and, in fact, Dr. Harrington opined below that a personal interview was unnecessary:

4. An interview process is not essential to this evaluation, given the daily contact of staff and residents in this inpatient setting. While an interview can be useful to generate additional information about those persons not regularly interacting with staff around treatment issues, the data from the interview would be one aspect of an already established, larger, multisourced database about the individual which led to his civil commitment. The interview data could enhance our understanding of the resident's attitudes and needs, however, interview information alone would be insufficient to support an assessment of significant treatment gain or to counter the weight of an abundant data base which led to civil commitment.
5. A clinical interview is not a substitute for clinical interventions. Treatment gains for sexual offender treatment issues must be observed and evaluated in vivo, that is, during the interactive process of a resident engaging with staff through completing treatment tasks identified in the individual treatment plans. The treatment process can then identify the resident's knowledge base and skills as well as their ability to cooperate and comply with supervision and authority, an essential ingredient for a less restrictive community placement.
State's Response Br., Appendix F at 2. Dr. Harrington's opinion was admissible under ER 702.
[1] Wash. Const. art. I, § 22 (amend.10) ("In criminal prosecutions the accused shall have the right ... to appeal in all cases...."); The Queen v. Justices of County of London, 2 Q.B. 492, 476 (1893) ("If no appeal were possible ... this would not be a desirable country to live in...."); Harlon Leigh Dalton, Taking the Right to Appeal (More or Less) Seriously, 95 Yale L.J. 62, 62 (1985) ("Although its origins are neither constitutional nor ancient, the right has become, in a word, sacrosanct." (footnote omitted)) and ("Even if appeal of right makes little difference in ultimate outcomes, and indeed even if it has a negative effect, we should retain it in each and every criminal case because of our overriding commitment to the following principles: that the awesome power of the state must not be allowed to overwhelm individuals, especially individuals who are genuinely believed to have transgressed laws we hold dear." Id. at 101-02.). Cf. Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1914) ("[T]he courts ... are charged at all times with the support of the Constitution, and ... people of all conditions have a right to appeal for the maintenance of such fundamental rights."), overruled on other grounds by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961).
[2] The majority implies the distinction between appeal of right and discretionary review is without a substantial difference as the decision to deny discretionary review may itself be reconsidered or reviewed. See Majority at 1214-1215. However, the standard for discretionary review and appeal is quite different: It is the discretion which supplants the right.
[3] The majority opines an order entered after a full hearing on annual review is arguably appealable as a matter of right. Majority at 1214 n.13. I do not find the distinction between denial of an order to show cause and dismissal after a full hearing persuasive as the same "continuing commitment" results from denial of the show cause order just as surely as it follows from like determination after a full hearing. By analogy any summary dismissal on the pleadings pursuant to CR 12(c) would be nonappealable whereas dismissal after an extended trial would be appealable as a matter of right. However such is not the rule as the end result is the same and equally appealable in either case.
[4] The California provision does not reference a "final" order; however, for the reasons previously stated, the order here is "final" as that term is used in our rule.
[5] Dr. Harrington does however note apparent clinical significance that Mr. Petersen "initiated formal complaints centered on events commonly viewed by others as relatively minor examples of inconsistencies or imperfections in human execution of institutional procedures," such as "malpractice, abuse and negligence" by staff. She also finds clinical significance in Petersen's statement that he has considered "litigation against the Superintendent" and demonstrates a "litigious" temperament, with a "legal agenda," "symptomatic of personality traits of sexual offenders." Clerk's Papers at 13-14.

Of course we must be mindful that during her observations indicative of Mr. Petersen's "legal agenda," the program itself was subject to a continuing federal injunction for abusive conduct toward its prisoners, including failure to provide minimally constitutional, adequate treatment. Thus, I would surmise that Mr. Petersen's legalistic concerns are not wholly without basis, and legal advice might be as helpful to him as it may be viewed as pathologically symptomatic by the likes of Dr. Harrington. Cf. Inmates of Nebraska Penal & Correctional Complex v. Greenholtz, 436 F.Supp. 432, 437 (D.Neb.1976) ("The Board's policy of not considering an inmate for parole if he had legal actions pending punished those inmates who had sought relief in the courts and discouraged other inmates from seeking relief in court. This policy obstructed the inmates' access to the courts in violation of their constitutional rights."), aff'd, 567 F.2d 1368 (8th Cir.1977).
[6] The majority primarily discusses a possible analogy to the right to counsel under the civil commitment act, RCW 71.05; however, I see no point in this discussion since the right under "this chapter," RCW 71.09, is express.