[No. 59366-8-I. Division One. March 29, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. BOBBY RAY THOMPSON, *Appellant*.

*David B. Koch* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*Mark K. Roe, Interim Prosecuting Attorney*, and *Seth A. Fine, Deputy*, for respondent.

¶1 GROSSE, J. — A postconviction motion for DNA (deoxyribonucleic acid) testing of semen samples in a rape case should be granted when testing would provide new information about the rapist's identity and favorable results would establish the defendant's innocence on a more probable than not basis. Here, there was no evidence that anyone other than the rapist had intercourse with the victim; thus, DNA results excluding the defendant as the source of the sperm would provide new information about the rapist's identity and likely establish his innocence. Accordingly, we reverse the trial court's order denying the motion for DNA testing.

## FACTS

¶2 One evening in April 1995, J.S. went out with some friends to a bar in Lynnwood. At some point, she had a brief conversation with a man she later identified as Bobby Thompson. Later in the evening, as she was leaving the bar, the man approached her again and told her there was an after-hours party at the hotel across the street.

¶3 The two of them then went into a hotel room, but there was no party in the room. When J.S. said she wanted to leave, the man hit her on the head, knocking her unconscious. When she regained consciousness, she realized her clothes were off and the man was raping her. She tried to fight him off, but he hit her again and raped her a second time. When she tried to escape, he attempted to rape her a third time and she ran into the bathroom. He then threw her head against the wall and knocked her out again. When she came to, the bathtub water was running and he was trying to drown her in the tub. The next thing she remembers is being in the hospital.

¶4 That same night, shortly before 3:00 a.m., Lynnwood police received a report of a domestic disturbance in a room at the hotel. When one of the officers went to the room, the door was closed and he could hear water running inside the room. He went back to the front desk and waited for the other officers to arrive. When they arrived, they walked backed to the room and heard a door open. They looked down the hallway and saw Thompson leaving the room with J.S. and pushing her out the door into a nearby emergency exit. When the officers approached, J.S. began yelling hysterically that Thompson had beaten her and was going to kill her. Thompson was detained and arrested.

¶5 Officers then went into the room to photograph the scene and gather evidence. They found blood on the sheets, on the floor and on the bathroom wall, and a washcloth that appeared to have blood soaked into it. Sperm was also found on vaginal swabs taken from J.S. No DNA analysis was conducted on the blood or sperm samples. Blood samples taken from J.S. and Thompson indicated that the blood type in the collected samples matched that of J.S., but not Thompson.

¶6 Hotel records showed that the room was registered to Thompson. He had registered as a representative of Loram Corporation, with a Minnesota address. There were 12 or 13 rooms registered to that company.

¶7 The State charged Thompson with first degree rape. At a defense interview, J.S. said that she thought Thompson was 5'7" or 5'8", had light-colored hair and no facial hair. In fact, Thompson was 6'3", had dark hair and facial hair. Thompson did not present any evidence at trial. On July 25, 1995, a jury convicted him of first degree rape and he was sentenced to 280 months in prison.

¶8 On October 20, 2006, Thompson filed a motion under RCW 10.73.170 asking for DNA testing of evidence gathered in his case. He argued that his defense at trial was that he did not commit the rape and that DNA testing would prove his innocence and reveal the rapist's true identity. The court denied the motion, based in part on the fact that the evidence had been destroyed. He appealed and this court dismissed the appeal as moot, based on the assumption that all testable evidence had been destroyed.

¶9 After Thompson later discovered that the state patrol in fact had retained blood and semen samples from his case, the State moved this court to recall the mandate in the appeal. This court granted the motion and also ordered the parties to address whether the trial court's order denying DNA testing was appealable as of right and whether the RAP rules apply to determining indigency. This court then stayed the appeal pending our state Supreme Court's decision in *State v. Riofta*,[1] a case that involved the applicability of RCW 10.73.170. When *Riofta* was decided in June 2009, the stay was lifted and this case was referred to a panel of this court for oral argument.

## ANALYSIS

■■ ¶10 The State correctly concedes that the denial of a motion for DNA testing under RCW 10.73.170 is appealable as a matter of right because it is a final order made after judgment that affects a substantial right.[2] Thompson

---

[1] 166 Wn.2d 358, 209 P.3d 467 (2009).

[2] *See* RAP 2.2(a)(13).

also contends that he is entitled to an order of indigency for this appeal under RAP 15.2(b)(1)(a). That rule provides that an indigent party is entitled to public funds for appellate review of "criminal prosecutions or juvenile offense proceedings meeting the requirements of RCW 10.73.150." RCW 10.73.150 provides:

> Counsel shall be provided at state expense to an adult offender convicted of a crime and to a juvenile offender convicted of an offense when the offender is indigent . . . and the offender:
>
> (1) Files an appeal as a matter of right. . . .

Thompson contends that because he is entitled to an appeal as a matter of right of an order denying DNA testing, RAP 15.2(b)(1)(a) applies to this appeal. We agree.

¶11 The State argues that a motion for DNA testing under RCW 10.73.170 is not a challenge to a conviction, but a request for an order to conduct testing. The State contends that RCW 10.73.150 must be harmonized with the DNA testing statute, RCW 10.73.170, which provides counsel for indigent parties only for motions filed in the trial court, not appellate review. That statute provides in part:

> Upon written request to the court that entered a judgment of conviction, a convicted person who demonstrates that he or she is indigent under RCW 10.101.010 may request appointment of counsel solely to prepare and present a motion under this section, and the court, in its discretion, may grant the request.[3]

Alternatively, the State contends that if the statutes conflict, this statute must apply because it is more specific.

¶12 Because Thompson is requesting public funds for appellate review, RAP 15.2(b)(1)(a) and RCW 10.73.150 control because they address appeals as of right. This does not conflict with RCW 10.73.170, which simply addresses public funding of motions in the trial court, not appeals. But even if the statutes did conflict, RCW 10.73.150 is more

---

[3] RCW 10.73.170(4).

specific because it is the one that addresses appeals. Thus, RAP 15.2(b)(1)(a) applies to Thompson's appeal.

 ¶13 Thompson next contends that the trial court erred by denying his motion for DNA testing because he satisfied both the procedural and substantive requirements for testing under RCW 10.73.170. That statute provides that a motion for DNA testing shall

(a) State that:

(i) The court ruled that DNA testing did not meet acceptable scientific standards; or

(ii) DNA testing technology was not sufficiently developed to test the DNA evidence in the case; or

(iii) The DNA testing now requested would be significantly more accurate than prior DNA testing or would provide significant new information;

(b) Explain why DNA evidence is material to the identity of the perpetrator of, or accomplice to, the crime, or to sentence enhancement.[4]

The statute further provides that the motion shall be granted if, in addition to establishing these two procedural requirements, "the convicted person has shown the likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis."[5] We review a trial court's decision on a motion brought under this statute for an abuse of discretion.[6]

 ¶14 Here, the trial court denied Thompson's motion based on the following reasons:

1. As the evidence has been destroyed, there is nothing that can be tested.

2. The defendant fails to satisfy RCW 10.73.170(2)(a). There has been no showing that DNA technology was unavailable at the time of trial, or that current technology is significantly more accurate or would provide significant new information.

---

[4] RCW 10.73.170(2).

[5] RCW 10.73.170(3).

[6] *Riofta,* 166 Wn.2d at 370.

[3.] The defendant has failed to satisfy RCW 10.73.170(3). There is no likelihood that the DNA evidence would demonstrate the defendant's innocence.

¶15 It is undisputed that the first reason is no longer supported because the evidence is in fact available for testing. Thompson also contends that the second reason is without basis because it is inconsistent with our state Supreme Court's decision in *Riofta*. *Riofta* held that DNA testing "is not precluded by the procedural requirements of the statute on the basis that it could have been, but was not, tested prior to the trial."[7] Rather, the court concluded that "[t]he plain meaning of the statute allows DNA testing based on either advances in technology *or* the potential to produce significant new information," rejecting the Court of Appeals' reasoning that postconviction testing of an item could not yield new information when the item was not newly discovered evidence and could have been tested at trial.[8] Thus, the second reason in support of the trial court's order is also without basis because DNA testing here would produce significant new information about the identity of the rapist.

■ ■ ¶16 Thompson further contends that the trial court erred by finding that he had not satisfied the third substantive statutory requirement that he has shown the likelihood that the DNA evidence would demonstrate innocence. As the court recognized in *Riofta*, "[i]n contrast to the statute's lenient procedural requirements, [RCW 10.73.170(3)'s] substantive standard is onerous."[9] The court noted that the statute's "use of the word 'innocence' indicates legislative intent to restrict the availability of postconviction DNA testing to a limited class of extraordinary cases where the results could exonerate a person who

---

[7] 166 Wn.2d at 366.

[8] 166 Wn.2d at 365.

[9] 166 Wn.2d at 367.

was wrongfully convicted of a crime."[10] The court then explained that to determine whether the standard has been met,

> a court must look to whether, viewed in light of all the evidence presented at trial or newly discovered, favorable DNA test results would raise the likelihood that the person is innocent on a more probable than not basis. The statute requires a trial court to grant a motion for postconviction testing when exculpatory results would, in combination with the other evidence, raise a reasonable probability the petitioner was not the perpetrator.[11]

The court also noted that "[t]he failure to seek DNA testing at trial is a factor the trial court may take into account in deciding whether there is a 'likelihood' the requested testing would demonstrate innocence on a more probable than not basis."[12]

¶17 In *Riofta*, the court held that the trial court reasonably concluded that the absence of the defendant's DNA on a hat would not likely demonstrate his innocence on a more probable than not basis.[13] The court noted that the hat belonged to another person and was worn by the shooter for only a short time and that the defendant's head was shaved.[14] The court further concluded that the presence of a third person's DNA on the hat "is also unavailing" because it did not establish that the person wearing the hat was wearing it at the time of the shooting.[15] The court also noted the strong eyewitness identification evidence.[16]

---

[10] 166 Wn.2d at 369 n.4.

[11] 166 Wn.2d at 367-68 (emphasis omitted).

[12] 166 Wn.2d at 366 n.1; *see also* 166 Wn.2d at 368-69 n.3.

[13] 166 Wn.2d at 370.

[14] 166 Wn.2d at 370.

[15] 166 Wn.2d at 370-71.

[16] 166 Wn.2d at 371.

¶18 But in *State v. Gray*,[17] this court held that the defendant satisfied the substantive requirement of RCW 10.73.170 where vaginal swabs, underwear, and hair samples were not tested in a rape case. Gray was convicted for raping two teenagers at a campsite. He was found by police in a field near the campsite after the crime was reported and a truck parked near the campsite was registered to Gray.[18] The victims were unable to identify Gray, while two other witnesses identified him in one photo montage but not in another.[19] Vaginal and rectal swabs taken from the victims tested negative for semen.[20] Hair samples from Gray and the victims were also collected.[21] Hair comparison analysis did not conclusively establish Gray as the assailant and no DNA analysis was conducted on the hair samples or the swabs collected from the victims.[22] The court concluded that the absence of Gray's DNA in any of the hair samples, underwear, or swabs would suggest Gray's innocence because the crime was committed by a single person who had intimate contact with the victims.[23] The court distinguished *Riofta*, where the absence of Riofta's DNA on the hat did not demonstrate his innocence because more than one person could have worn the hat.[24]

¶19 Thompson contends that likewise here, the evidence at trial combined with test results showing that his DNA was not found in the samples would raise a reasonable probability of his innocence. He points to the weak eyewitness identification by J.S., noting that her physical descrip-

---

[17] 151 Wn. App. 762, 774, 215 P.3d 961 (2009).

[18] 151 Wn. App. at 766.

[19] 151 Wn. App. at 766.

[20] 151 Wn. App. at 767.

[21] 151 Wn. App. at 767.

[22] 151 Wn. App. at 767.

[23] 151 Wn. App. at 774.

[24] 151 Wn. App. at 774.

tion of the rapist did not match Thompson.[25] The State contends that there was also strong eyewitness identification evidence admitted at trial: three police officers saw Thompson pushing J.S. out of the hotel room where the rape occurred and J.S. identified him to the officers at the time as the person who had just beaten her and threatened to kill her.

¶20 When evaluated in combination with the other evidence, the absence of Thompson's DNA in the blood samples would not suggest his innocence on a more probable than not basis. Because the blood type matched the victim's, not Thompson's, the absence of his DNA in the blood sample would not necessarily exculpate him. Rather, it would simply indicate that the blood came from J.S.'s injury.

¶21 But an absence of Thompson's DNA in the semen samples is highly probative of his innocence because the only source of the semen was the rapist. Because there was no evidence that J.S. had intercourse that night with anyone other than the rapist, DNA results ruling out Thompson as the sperm source would rebut even the strong eyewitness testimony indicating that he was the rapist.[26] Indeed, favorable DNA results here would be even stronger evidence of innocence than in *Gray* where there was no semen to be tested, but only swabs from areas where intimate contact may have occurred.

¶22 We reverse and remand for an order permitting DNA testing under RCW 10.73.170.

Cox and APPELWICK, JJ., concur.

Reconsideration denied May 26, 2010.

---

[25] He also points to an offer of proof he made pretrial that J.S.'s description actually matched that of another coworker who was also staying at the hotel at the time. But as the State contends, this was not evidence admitted at trial and is therefore not properly considered in the determination of whether he established his innocence.

[26] The State improperly relies on a statement made by Thompson that he admitted to having consensual intercourse with J.S. This statement was not admitted at trial and as discussed above, the "more probable than not" innocence determination is made by considering only evidence that was admitted at trial.