**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53567-0-II |
| Respondent, | |
| v. | |
| JEROME CEASAR ALVERTO, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Jerome C. Alverto appeals the trial court's order denying his motion to preserve deoxyribonucleic acid (DNA) evidence.  Alverto argues that the trial court erred by (1) denying his motion when there is a statute that requires the DNA collected in his case to be maintained, (2) denying his motion without an explanation, and (3) denying his motion when the denial could be seen as an invitation to destroy the DNA evidence.

Alverto's appeal of the trial court's order denying his motion to preserve DNA evidence is not appealable under RAP 2.2(a)(13).  And we decline to accept discretionary review.  Therefore, we dismiss Alverto's appeal.

FACTS

A.    BACKGROUND

On May 13, 2006, Alverto shot his ex-wife, S.W. in the chest and the head.  *State v. Alverto*, noted at 157 Wn. App. 1011, 2010, WL 2927452, *1.  S.W. recognized Alverto's body and voice, even though he wore dark clothing and a bandana around his face.  *Id*.  S.W. survived and was

able to knock on the neighbor's door and tell them that Alverto had attacked her, the types of cars he drove, and his address. *Id.*

The police caught Alverto, who was wearing dark clothing and had blood on his pants. The blood on Alverto's pants matched S.W.'s DNA. *Id.* at *2.

The police found a duffel bag that contained a bloody handgun, S.W.'s cellular phone, S.W.'s garage door opener, a picture of S.W. and her boyfriend, and a grocery list with Alverto's name printed across the top. *Id.* The police also found a notebook in the front seat of Alverto's vehicle, which contained a to-do list. *Id.* In this to-do list, Alverto listed the tools he would use, including a gun, and "'stranger hair/condom.'" *Id.* The list stated that the dress code would include dark pants and a dark shirt, and that he would enter the garage at 5 a.m.

On August 18, 2008, the State charged Alverto with one count of attempted murder in the first degree, one count of burglary in the first degree, and one count of robbery in the first degree. All three convictions were alleged to be aggravated by Alverto being armed with a firearm at the time of the commission of the crime.

After a trial, the jury found Alverto guilty as charged. Alverto was sentenced to 460.5 months in prison. Alverto appealed, and we affirmed Alverto's convictions.[1]

B.    POST-CONVICTION MOTIONS AND PERSONAL RESTRAINT PETITIONS FOR DNA TESTING

Since his direct appeal, Alverto has filed several unsuccessful post-conviction motions and personal restraint petitions (PRPs), requesting DNA testing of a hair that was found at the crime

---

[1]  *State v. Alverto*, noted at 157 Wn. App. 1011 (2010).

scene and alleging it was not his hair. On July 31, 2012, we dismissed[2] as frivolous Alverto's PRP that argued the untested hair would prove his innocence. On September 18, 2013, we affirmed[3] a trial court order denying Alverto's motions to have the hair tested, holding that there was "considerable evidence establishing Alverto as the perpetrator of the crimes." *Ruling Affirming Orders*, No. 44098-9-II (September 18, 2013) at 2. On March 7, 2017, we affirmed[4] the trial court's order rescinding a prior order granting DNA testing of the hair because "regardless of whether DNA testing showed that the hair belonged to someone other than Alverto, it would not demonstrate Alverto's innocence." *Alverto*, No. 47960-5-II, slip op. at 1. On September 7, 2017, we dismissed[5] as untimely a CrR 7.8 motion transferred to this court to be considered as a PRP.

C.    MOTION TO PRESERVE DNA EVIDENCE

On December 26, 2018, Alverto filed in the trial court a Motion to Preserve Deoxyribonucleic Acid (DNA) Evidence, requesting the court "to preserve the DNA evidence of a hair found in blood on the vertical surface of a glass patio door, and all other DNA evidence in the above cause number." CP at 371. The trial court denied the motion on April 19, 2019. Alverto appealed the trial court's order denying the motion to preserve DNA.

---

[2] Order Dismissing Opinion, *In re Pers. Restraint of Alverto*, No. 42739-7-II (July 31, 2012).

[3] Ruling Affirming Orders, *State v. Alverto*, No. 44098-9-II (September 18, 2013).

[4] *State v. Alverto*, No. 47960-5-II (Wash. Ct. App. March 7, 2017) (unpublished) http://www.courts.wa.gov/opinions/pdf/D2%2047960-5-II%20Unpublished%20Opinion.pdf

[5] Order Dismissing Petition, *In re Pers. Restraint of Alverto*, No. 49634-8-II (September 7, 2017).

No. 53567-0-II

On July 13, 2020, we entered an Order for Supplemental Briefing, ordering the parties to "file supplemental briefs addressing whether the designated Order Denying Defendant's Motion to Preserve Deoxyribonucleic Acid (DNA) Evidence is appealable under RAP 2.2." Spindle (Order for Supplemental Briefing).

ANALYSIS

A. APPEALABLE AS A MATTER OF RIGHT

Alverto argues that the order denying Alverto's motion to preserve DNA evidence is appealable as a matter of right under RAP 2.2(a)(13). We disagree.

RAP 2.2(a) states, "Unless otherwise prohibited by statute or court rule and except as provided in sections (b) and (c), a party may appeal from only the following superior court decisions . . . (13) *Final Order after Judgment.* Any final order made after judgment that affects a substantial right." A party seeking review must show both (1) finality and (2) effect on a substantial right. *State v. Coleman*, 6 Wn. App. 2d 507, 511, 431 P.3d 514 (2018).

1. Final Order

A final judgment or order is defined as, "'A court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs (and, sometimes, attorney's fees) and enforcement of the judgment.'" *State v. Taylor*, 150 Wn.2d 599, 602, 80 P.3d 605 (2003) (quoting BLACK'S LAW DICTIONARY 847 (7th ed. 1999) (a decision that leaves the matter in the same condition in which it was before is not a final judgment).

RCW 5.70.010[6] states:

---

[6] RCW 5.70.010 was amended in 2020. However, there were no substantive changes made affecting this opinion.

4

> (1) In any felony case initially charged as a violent or sex offense, as defined in RCW 9.94A.030, a governmental entity shall preserve any DNA work product that has been secured in connection with the criminal case according to the following guidelines:
>
> (a) Except as provided in (b) of the subsection, where a defendant has been charged and convicted in connection with the case, the DNA work product must be maintained throughout the length of the sentence, including any period of community custody extending through final discharge.

RCW 5.70.005 states:

> (2) "DNA work product" means . . . (b) any material contained on a microscope slide, swab, in a sample tube, cutting, DNA extract, or some other similar retention method used to isolate potential biological evidence that has been collected by law enforcement or a forensic nurse as part of an investigation and prepared for scientific analysis, whether or not it is submitted for scientific analysis and derived from:
>
> . . . .
>
> (iv) Hair.

A "'[v]iolent offense'" includes "[a]ny felony defined under any law as a class A felony or an attempt to commit a class A felony." RCW 9.94A.030(55)(a)(i).[7] We review questions of statutory interpretation de novo. *State v. Bao Dinh Dang*, 178 Wn.2d 868, 874, 312 P.3d 30 (2013).

Here, RCW 5.70.010 already requires that DNA work product be maintained through the length of the sentence in a felony case initially charged as a violent offense. A violent offense includes "[a]ny felony defined under any law as a class A felony or an attempt to commit a class A felony." RCW 9.94A.030(55)(a)(i). Murder in the first degree, burglary in the first degree, and robbery in the first degree are all class A felonies. RCW 9A.32.030(2); RCW 9A.52.020(2); RCW

---

[7] RCW 9.94A.030 was amended in 2020. However, there were no substantive changes made affecting this opinion.

9A.56.200(2). Therefore, these crimes, as well as any attempts to commit these crimes, are violent offenses.

Alverto was convicted of attempted murder in the first degree, burglary in the first degree, and robbery in the first degree. Thus, the DNA work product in connection with his case must be maintained through the length of his sentence. And DNA work product includes hair collected by law enforcement as part of the investigation. RCW 5.70.010(3)(b)(ii)(D). Therefore, under the statute, the hair sample will be maintained through the length of Alverto's sentence.

And there is no requirement in the statute that the trial court enter a separate order to preserve the DNA work product. Thus, the trial court's Order Denying Defendant's Motion to Preserve DNA Evidence did not settle the rights of the parties and dispose of all issues in controversy because RCW 5.70.010 already requires that DNA work product be maintained through the length of the sentence in a felony case initially charged as a violent offense.

The trial court's order left the case in the same condition in which it was before Alverto's motion. *See Taylor*, 150 Wn. App. at 602. And the order disposed of only the motion before the trial court and achieved no final disposition. *See In re Peterson*, 138 Wn.2d 70, 88, 980 P.2d 1204 (1999).[8] Therefore, because the trial court's order left the case in the same condition in which it

---

[8] Alverto relies on *State v. Gossage*, 138 Wn. App. 298, 156 P.3d 951 (2007) *reversed in part on other grounds*, 165 Wn.2d 1 (2008), to argue that the Order Denying Defendant's Motion to Preserve DNA Evidence was final because "there was nothing left to decide concerning that motion." Supp. Br. of App. at 4. In *Gossage*, the court held a petition for restoration of civil rights or relief from the obligation to register as a sex offender to be final. 138 Wn. App. at 302. The court determined that the petition left "'nothing else to be done to arrive at the ultimate disposition of the petition.'" *Id.* (quoting *Peterson*, 138 Wn.2d at 98). And unlike in *Peterson*, there was no set review of an offender's eligibility for restoration or relief from the registration obligation. *Id.*

was before Alverto's motion, the trial court order denying Alverto's motion to preserve DNA evidence was not a final order.

    2.      Substantial Right

The denial of a motion for DNA *testing* under RCW 10.73.170 has been deemed appealable as a matter of right because it is a final order after judgment that affects a substantial right. *State v. Thompson*, 155 Wn. App. 294, 298, 229 P.3d 901 (2010). But there is no case law holding that an order denying a motion *to preserve* DNA evidence affects a substantial right. Given the operation of RCW 5.70.010, which requires DNA evidence be preserved through the length of the sentence in a felony case initially charged as a violent offense, the order denying Alverto's motion does not affect any of his rights because his DNA evidence will be preserved, regardless of the motion. Therefore, under the facts of this case, the order denying Alverto's motion to preserve DNA evidence does not affect a substantial right.

Because the trial court's order denying Alverto's motion to preserve DNA evidence was not a final order after judgment affecting a substantial right, the trial court's order is not appealable under RAP 2.2(a)(13).

B.    DISCRETIONARY REVIEW

Alverto argues that this court "should accept discretionary review if appeal as a matter of right is unavailable." Supp. Br. of App. at 6. Alverto contends that the trial court committed probable error when it denied his motion to preserve the DNA evidence. Alverto further contends

---

Here, while, like in *Gossage*, there was nothing left to be done to arrive at the ultimate disposition of Alverto's motion, there already is a statutory requirement to preserve DNA. *See* RCW 5.70.010. Thus, *Gossage* is inapposite.

that the trial court's decision "substantially implicates his right to preservation of potentially exculpatory DNA evidence, would limit his freedom to act in the future, and would render further proceedings useless should the DNA evidence be destroyed as a result of this order." Supp. Br. of App. at 7-8.

1.    RAP 2.3(b)(1)

RAP 2.3(b)(1) allows this court to accept discretionary review when "[t]he superior court has committed an obvious error which would render further proceedings useless." Here, as discussed above, under RCW 5.70.010, Alverto's DNA evidence will be maintained through the length of Alverto's sentence. Further, there is no evidence in the record that the DNA evidence would be destroyed. Thus, the denial of Alverto's motion to preserve DNA evidence would not render further proceedings useless because it would not change Alverto's position in any way. Because the Order Denying Defendant's Motion to Preserve DNA Evidence would not render further proceedings useless, discretionary review under RAP 2.3(b)(1) is inappropriate.

2.    RAP 2.3(b)(2)

RAP 2.3(b)(2) allows discretionary review when "[t]he superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act." Here, as discussed above, Alverto's DNA will be maintained through the length of Alverto's sentence. *See* RCW 5.70.010. There is nothing in the statute that requires the trial court to enter a separate order to preserve the DNA work product. Because Alverto's DNA will be preserved, the trial court did not commit probable error nor will the court's decision alter the status quo. Therefore, discretionary review under RAP 2.3(b)(2) is inappropriate.

No. 53567-0-II

Alverto's appeal of the trial court's order denying his motion to preserve DNA evidence is not appealable under RAP 2.2(a)(13). And we decline to accept discretionary review. Therefore, we dismiss Alverto's appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Glasgow, J.

_____
Cruser, J.

9