116 P.3d 415 (2005)
In re DETENTION OF Darnell McGARY.
No. 31487-8-II.
Court of Appeals of Washington, Division 2.
July 19, 2005.
Todd Richard Bowers, Attorney General-CJD, Jennifer L. Treadwell Karol, Attorney General-CJD, Seattle, WA, for Respondent.
Peter B. Tiller, The Tiller Law Firm, Centralia, WA, for Appellant.
VAN DEREN, J.
¶ 1 Darnell McGary stipulated to involuntary civil commitment as a sexually violent predator under chapter 71.09 RCW; but he reserved the right to appeal two issues: (1) that his involuntary detention at Western State Hospital (WSH) was not total confinement, thus the Department of Social and Health Service's (the Department)[1] sexually violent predator (SVP) petition should be dismissed because the Department did not allege a recent overt act; and (2) the Department's petition violated his 1988 guilty plea agreement for his sexually violent crimes. Finding no error, we affirm.

FACTS

A. McGary's Criminal History
¶ 2 In 1987 and 1988, McGary committed sexual offenses against three different women. Each offense involved forcible entry into the victim's home. In 1988, McGary pleaded guilty to two counts of first degree rape, one count of indecent liberties by forcible compulsion, two counts of first degree burglary, and one count of second degree burglary based on the offenses against the three women. His convictions of rape and indecent liberties by forcible compulsion are sexually violent offenses under RCW 71.09.020(15).[2]
*416 ¶ 3 McGary served approximately nine years in prison. While in prison, McGary committed over 40 major infractions, including numerous threats to staff, and suffered from paranoia and delusions that prison officers were trying to kill him.

B. Sexually Violent Predator Petitions and WSH Detention
¶ 4 Approximately one week before his scheduled release from prison in April 1998, the Department filed a SVP petition for McGary's civil commitment under chapter 71.09 RCW. After the petition was filed, a psychological examination found that McGary satisfied the legal definition of a sexually violent predator under RCW 71.09.020(16). This examination reviewed police reports of his prior sexual offenses, his prison file, and numerous prior mental health evaluations.
¶ 5 Following the probable cause hearing on the Department's petition, McGary awaited trial at McNeil Island prison; but his mental condition continued to deteriorate. McGary continuously refused to take psychiatric medication to control his paranoid and schizophrenic behavior. A psychologist and medical doctor employed by WSH evaluated McGary and recommended involuntary commitment under chapter 71.05 RCW so that he could receive treatment for schizophrenia and antisocial personality disorders. Their affidavit in support of involuntary commitment stated that McGary "requires inpatient treatment [and] is unsafe to reside in the community." Clerk's Papers (CP) at 205. Their petition under chapter 71.05 RCW stated that because of McGary's mental disorders, he presented "a likelihood of serious harm to others" and "is gravely disabled," thus McGary "requires intensive, supervised, 24 hour restrictive care." CP at 207.
¶ 6 Consequently, in April 2000, the Department dismissed the SVP petition without prejudice and McGary was involuntarily committed under chapter 71.05 RCW to WSH.[3] McGary was detained at WSH from April to December 2000, except for a brief period in July when he was held in the Pierce County Jail because of his dangerous and threatening behavior toward WSH staff.
¶ 7 During his commitment at WSH, McGary spent time in two of WSH's most highly secured wards that housed males only.[4] As an experienced[5] WSH psychologist stated in his declaration, "Mr. McGary's involuntary commitment at Western State Hospital was intensive, supervised, twenty-four hour per day care. . . . his life was structured, regulated, supervised and controlled." CP at 198-99. For example, except for two months, McGary's ward was accessible only through controlled elevators and was continuously locked, with only WSH staff carrying keys. Consistent with the WSH doctors' orders, at all times during McGary's detention at WSH, the staff continuously supervised his use of the weight room, dining hall, and similar facilities. WSH staff closely supervised a few dances McGary attended. And McGary had access to a smoking pad attached to his locked ward that WSH staff supervised.
¶ 8 McGary was never authorized to leave WSH without a supervised escort. Consequently, WSH staff escorted him on the three occasions when McGary left the WSH grounds: twice when he swam at a nearby swimming pool and once when he registered as a sex offender at the sheriff's office. McGary's declaration describing his WSH *417 commitment is consistent with all of the foregoing facts.
¶ 9 WSH forcibly medicated McGary to control his delusions. In September 2000, WSH doctors petitioned for an additional three months of involuntary detention at WSH because he remained "gravely disabled, [and] a potential danger to others." CP at 225. The WSH doctors' affidavit stated that McGary remained "[p]aranoid" and "delusional," partly because he "continues to believe that he was made psychotic through systematic brainwashing at the prison system. [McGary] stated that he views himself primarily as having been a robber who was feeding his drug habit and stole some sex along the way." CP at 224.
¶ 10 Eventually McGary's mental condition stabilized; but WSH doctors continued to believe that McGary satisfied the definition of a sexually violent predator. Consequently, on December 15, 2000, the Department again filed a SVP petition while he was detained at WSH. The petition recited his prior rape and indecent liberties convictions and asserted that McGary's mental disorders included Paraphilia Not Otherwise Specified (Rape) and an antisocial personality disorder. The Department's petition did not allege a recent overt act.
¶ 11 After filing the SVP petition, the Department dismissed McGary's involuntary civil commitment under chapter 71.05 RCW and he was transferred back to McNeil Island prison for the pending SVP proceedings. Less than a week later, McGary stipulated to a finding of probable cause that he was a sexually violent predator. He remained at McNeil Island while awaiting trial on the SVP petition.

C. Procedural History
¶ 12 In September 2001, McGary filed motions to dismiss the Department's SVP petition, arguing that because his detention at WSH was not total confinement, the Department's petition improperly failed to allege a recent overt act and that the petition violated his 1988 plea agreement regarding his prior sexual offenses. The trial court denied McGary's motions.
¶ 13 In January 2004, approximately one week before trial on the Department's SVP petition, McGary renewed his argument that the petition was fatally flawed because it did not allege a recent overt act based on our Supreme Court's discussion of total confinement in In re Detention of Albrecht, 147 Wash.2d 1, 10, 51 P.3d 73 (2002). The trial court again denied McGary's motion, concluding that the Department was not required to allege a recent overt act because McGary's WSH detention was total confinement given the differing degrees of supervision in typical prison settings and chapter 71.09 RCW's legislative intent.
¶ 14 After the trial began, but before the jury was seated, McGary stipulated to civil commitment under chapter 71.09 RCW. He stipulated that he suffers from schizophrenia, an antisocial personality disorder, that "cause[ ] him serious difficulty controlling his sexually violent behavior" and that he was "more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility." CP at 145. The stipulation allowed McGary to be placed into a less restrictive alternative (LRA) on McNeil Island.
¶ 15 McGary's stipulation provided the right to appeal the trial court's denial of his two dismissal motions. Anticipating this appeal, the Department filed a motion to supplement the record on the recent overt act issue. McGary had earlier agreed to the Department's motion but later objected because of the Department's delay in filing it. The trial court admitted the Department's supplemental information and this timely appeal followed.

ANALYSIS
¶ 16 Approximately fifteen years ago, the Legislature enacted chapter 71.09 RCW to protect the public and provide a process for involuntary civil commitment for a small and dangerous group of offenders who are deemed sexually violent predators. RCW 71.09.010; In re Detention of Thorell, 149 Wash.2d 724, 750, 72 P.3d 708 (2003) (protecting the public from the heightened risk of sexual violence presented by sexually violent predators is a legitimate state interest).
*418 ¶ 17 A sexually violent predator is defined as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(16). The Department must prove chapter 71.09 RCW's elements beyond a reasonable doubt.[6] RCW 71.09.060(1); Thorell, 149 Wash.2d at 745, 72 P.3d 708.

I. TOTAL CONFINEMENT AND RECENT OVERT ACT REQUIREMENT
¶ 18 McGary argues that because his involuntary commitment at WSH was not total confinement, the Department's petition filed during his WSH detention was fatally flawed because it failed to allege a recent overt act. The Department responds that McGary's nine months at WSH satisfied the statutory definition of total confinement. The Department also emphasizes that it is an offenders release into the community that triggers the requirement that the Department prove current dangerousness through a recent overt act.
¶ 19 RCW 71.09.030 authorizes the Department to file a SVP petition:
When it appears that: (1) A person who at any time previously has been convicted of a sexually violent offense is about to be released from total confinement on, before, or after July 1, 1990.
. . .
(5) a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement and has committed a recent overt act; and it appears that the person may be a sexually violent predator, the prosecuting attorney of the county where the person was convicted or charged or the attorney general if requested by the prosecuting attorney may file a petition alleging that the person is a `sexually violent predator' and stating sufficient facts to support such allegation.
RCW 71.09.030 (emphasis added).
¶ 20 In Albrecht, our Supreme Court applied former RCW 9.94A.030(35) (1996)'s total confinement definition to the SVP statute.[7] 147 Wash.2d at 9-10, 51 P.3d 73. This statute provides:
`Total confinement' means confinement inside the physical boundaries of a facility or institution operated or utilized under contract by the state or any other unit of government for twenty-four hours a day, or pursuant to RCW 72.64.050 and 72.64.060.
Former RCW 9.94A.030(35).[8]
¶ 21 The Department's SVP petition and subsequent civil commitment under chapter 71.09 RCW satisfies substantive due process through a determination that the offender is currently dangerous because he has committed a recent overt act. RCW 71.09.030(5); Albrecht, 147 Wash.2d at 7, 51 P.3d 73. A recent overt act is "any act or threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act." RCW 71.09.020(10).
¶ 22 If an offender is in total confinement at the time the petition is filed, RCW 71.09.030(1) relieves the Department's burden to allege and prove a recent overt act. Albrecht, 147 Wash.2d at 8-9, 51 P.3d 73. RCW 71.09.030(1) satisfies substantive due process because an incarcerated individual *419 has no meaningful opportunity to commit a recent overt act. Albrecht, 147 Wash.2d at 8-9, 51 P.3d 73. Consequently, to require that the Department allege and prove a recent overt act while the individual is in a total confinement setting "would be impossible [for the Department] to meet" and "due process does not require that the absurd be done before a compelling state interest may be vindicated." In re Turay, 150 Wash.2d 71, 83, 74 P.3d 1194 (2003); see also Albrecht, 147 Wash.2d at 8-9, 51 P.3d 73.
¶ 23 But when "the offender has been released into the community, proof of a recent overt act is no longer an impossible burden for the [Department] to meet." Albrecht, 147 Wash.2d at 10, 51 P.3d 73 (emphasis added). Thus, when the offender has a genuine opportunity to reoffend while in the community, the Department must demonstrate current dangerousness by alleging and proving a recent overt act. RCW 71.09.030(5); Albrecht, 147 Wash.2d at 10-11, 51 P.3d 73; see also In re Detention of Broten, 115 Wash.App. 252, 257, 62 P.3d 514, review denied, 150 Wash.2d 1010, 79 P.3d 445 (2003) (emphasizing that Broten "had spent time in the community and had the opportunity to overtly act."). In Albrecht, the Supreme Court also emphasized that the plain language of RCW 71.09.030(1) and (5) supports the foregoing analysis. 147 Wash.2d at 10, 51 P.3d 73.
¶ 24 Here, it is undisputed that the Department is a state agency that oversees WSH's operations. Further, the record shows that McGary's detention at WSH involved 24-hour supervision in a tightly controlled and secure environment. Thus, the dispositive issue is former RCW 9.94A.030(35)'s requirement that an offender not physically leave the facility as applied to an involuntary civil commitment under chapter 71.09 RCW.
¶ 25 We review a statute's plain language in order to "carry out the Legislatures intent." Albrecht, 147 Wash.2d at 9, 51 P.3d 73. Our review necessarily entails consideration of the plain language expressed in the statutory scheme and related statutes. State ex rel. Citizens Against Tolls (CAT) v. Murphy, 151 Wash.2d 226, 242, 88 P.3d 375 (2004). And our statutory interpretation must not create an absurd result. Strain v. W. Travel, Inc., 117 Wash.App. 251, 254, 70 P.3d 158 (2003), review denied, 150 Wash.2d 1029, 82 P.3d 243 (2004).
¶ 26 Regarding the involuntary commitment of sexually violent predators, the legislature has expressly declared that: "[t]he existing involuntary commitment act, chapter 71.05 RCW, is inadequate to address the risk to reoffend because during confinement these offenders do not have access to potential victims and therefore they will not engage in an overt act during confinement as required by the involuntary treatment act for continued confinement." RCW 71.09.010 (emphasis added).
¶ 27 WSH staff personally escorted and supervised McGary when he left WSH for two visits to a nearby swimming pool and to register as a sex offender at the sheriff's office. The Department accurately asserts that these limited and escorted movements outside of WSH's physical boundaries are not materially different from a prisoner's escorted release from a prison facility to attend a funeral, a doctor visit, or a sporting event. See, e.g., RCW 72.01.370. Similarly, a sexually violent predator can obtain approval for escorted leave to visit a sick relative, attend a funeral, or for certain medical care. RCW 71.09.200, 210.
¶ 28 McGary fails to reasonably articulate how his tightly controlled and supervised detention at WSH provided an opportunity to reoffend as in Albrecht. Indeed, McGary concedes that he "was not released into the community under conditions such as those found in Albrecht or Broten." Br. of Appellant at 16. And it is undisputed that involuntary detention at WSH does not constitute a release into the community analogous to community custody or placement. See In re Personal Restraint Petition of Liptrap, 111 P.3d 1227, 1229 (2005) ("Community custody is the intense monitoring of an offender in the community.") (emphasis added); State v. Gaines, 65 Wash.App. 790, 801, 830 P.2d 367 (1992).
¶ 29 Instead, McGary argues that he was not in total confinement because his escorts *420 wore plain clothes and he was not restrained. But his declaration admits that he was supervised and escorted at all times when briefly leaving WSH. McGary emphasizes that he attended a co-ed dance and was allowed to use the weight room, the dining hall, and a smoking pad. But all these activities at WSH occurred in a highly controlled environment with 24-hour supervision.
¶ 30 Further, WSH can operate as a total confinement facility. See State v. Platt, 143 Wash.2d 242, 248, 19 P.3d 412 (2001) ("the individual may be released from the total confinement of the state hospital into the community subject to conditions. RCW 10.77.110(3)"). McGary cites In Re Detention of Gordon, because it references RCW 71.09.60's directive to not place a sexually violent predator at a state mental facility because it is insecure for this population. 102 Wash.App. 912, 920, 10 P.3d 500 (2000). But this argument confuses the different purposes of RCW 71.09.30 and RCW 71.09.60.
¶ 31 RCW 71.09.30, which is the dispositive statute here, concerns the relationship between total confinement and the Department's burden to prove a recent overt act when the Department files a SVP petition in order to initiate such a proceeding. In contrast, Gordon's holding is specific to RCW 71.09.060(3), which directs the Department not to place an alleged sexually violent offender at WSH either during the pendency of or after SVP proceedings if the offender is found to be a sexually violent predator. RCW 71.09.060 applies after the trial court's probable cause finding under RCW 71.09.040. See also In re Detention of Ross, 114 Wash. App. 113, 120, 56 P.3d 602 (2002) (setting forth the separate steps of involuntary civil commitment under chapter 71.09 RCW).
¶ 32 As the Department's brief persuasively states, "A placement may not be a `secure facility' appropriate for housing committed SVPs, and yet be restrictive enough to prohibit any meaningful opportunity to commit a ROA [recent overt act] demonstrating current dangerousness." Br. of Respondent at 17. Significantly, RCW 71.09.060 is consistent with this argument and the case law previously discussed regarding the validity of a SVP petition. See RCW 71.09.060(1) ("If, on the date that the petition is filed, the person was living in the community after release from custody, the [Department] must also prove beyond a reasonable doubt that the person had committed a recent overt act.") (emphasis added). Further, unlike in Gordon, the Department complied with RCW 71.09.060. McGary was transferred from WSH to prison immediately after the Department filed its SVP petition and during the pendency of the SVP proceedings.
¶ 33 Thus, we hold that McGary's nine months of involuntary detention at WSH under chapter 71.05 RCW was total confinement due to his 24-hour supervision in a highly secure environment. His escorted leave from WSH on three occasions was not materially different than the escorted leave allowed in the total confinement setting of a prison and under chapter 71.09 RCW. Further, McGary never had a genuine opportunity to reoffend during both his brief escorted leaves and his detention at WSH's highly secure wards. To reverse under the facts here would be contrary to the legislative intent, case law, and statutory scheme of chapter 71.09 RCW.
¶ 34 Because McGary's involuntary detention at WSH was total confinement, the Department was not required to allege a recent overt act in its SVP petition. We affirm the trial court's denial of McGary's motion to dismiss for failure to allege a recent overt act. We limit our holding to involuntary commitment under chapter 71.05 RCW when the offender is at WSH under 24 hour supervision, in a highly secure ward, such as Ward S-10 and S-5 here, and escorted by WSH staff at all times when occasionally off WSH grounds.

II. PLEA
¶ 35 McGary next argues that the Department's SVP petition violated his 1988 plea agreement's language that provided the State would not assert additional charges of a related nature.
¶ 36 But McGary fails to acknowledge well settled case law that a SVP petition is a "collateral, not direct, consequence of a [criminal] plea." In re Abolafya, 114 Wash. *421 App. 137, 147, 56 P.3d 608 (2002), review denied, 149 Wash.2d 1020, 72 P.3d 761 (2003). Consequently, "[b]ecause a plea to a criminal charge leads only to the possibility of a later civil proceeding, a defendant does not need to be informed of this risk at the time of his plea." Abolafya, 114 Wash.App. at 147, 56 P.3d 608 (emphasis added). Thus, the Department's SVP petition did not violate McGary's plea agreement.
¶ 37 McGary also suggests that the Department's actions here deter future sex offenders from entering a plea agreement out of fear that the Department will later file a SVP petition. But McGary ignores that such petitions concern a small group of sex offenders. See RCW 71.09.010 (stating that sexually violent predators are "a small but extremely dangerous group"); see also Liptrap, 111 P.3d at 1234 n. 7 (citing a recent department of corrections report that only "50 percent of the department's referrals result in civil commitment proceedings [under chapter 71.09 RCW]."). And his assertion is pure speculation about the decision making process of a criminal defendant who is offered a plea agreement by the State that reduces the defendant's exposure to the potentially harsh consequences of a jury's verdict.
¶ 38 We affirm.
We concur: BRIDGEWATER, P.J., and HUNT J.
NOTES
[1] Because chapter 71.09 RCW is an involuntary civil commitment statute, we identify the Department herein as the petitioner. When referring to McGary's prior criminal proceedings we refer to the petitioner as the State.
[2] RCW 71.09.020(15) provides in relevant part:

`Sexually violent offense' means an act committed on, before, or after July 1, 1990, that is:
(a) An act defined in Title 9A RCW as rape in the first degree, rape in the second degree by forcible compulsion, rape of a child in the first or second degree, statutory rape in the first or second degree, indecent liberties by forcible compulsion, indecent liberties against a child under age fourteen, incest against a child under age fourteen, or child molestation in the first or second degree.
[3] McGary does not challenge the validity of his involuntary civil commitment under chapter 71.05 RCW. This statute has a different purpose than chapter 71.09 RCW. The legislature has articulated these differences:

[C]hapter 71.05 RCW [] is intended to be a short-term civil commitment system that is primarily designed to provide short-term treatment to individuals with serious mental disorders and then return them to the community. In contrast to persons appropriate for civil commitment under chapter 71.05 RCW, sexually violent predators generally have personality disorders and/or mental abnormalities which are unamenable to existing mental illness treatment modalities and those conditions render them likely to engage in sexually violent behavior.
RCW 71.09.010 (emphasis added).
[4] McGary also spent four days in a WSH admission ward with very tight security.
[5] The declarant has been an employed psychologist at WSH for over 21 years.
[6] After the Department filed its SVP petition, the legislature revised a number of chapter 71.09 RCW definitions, including a total confinement facility, recent overt act, and sexually violent predator. Laws of 2001 2nd sp.s. ch. 12, § 102; Laws of 2003 ch. 216, § 2. These revisions were in effect when the parties argued McGary's 2004 motion to dismiss based on the recent overt act issue.
[7] Albrecht applied RCW 9.94A.030(35)'s total confinement definition to RCW 71.09.030 when RCW 71.09.020(17)'s "total confinement facility" definition was effective. McGary does not meaningfully argue that Albrecht misapplied RCW 9.94A.030(35). And RCW 71.09.020(17)'s definition does not expressly define total confinement.
[8] Total confinement is currently codified at RCW 9.94A.030(42); but its text is unchanged. For clarity and consistency, we cite to former RCW 9.94A.030(35) applied by the Albrecht court.