231 P.3d 205 (2010)
In re the DETENTION OF Darnell McGARY, Appellant.
No. 38257-1-II.
Court of Appeals of Washington, Division 2.
March 23, 2010.
Publication Ordered May 11, 2010.
*207 David Bruce Koch, Jennifer J. Sweigert, Nielsen Broman & Koch PLLC, Seattle, WA, for Petitioner.
Sarah Sappington, Office of the Atty. General, Brooke Elizabeth Burbank, Assistant Attorney General-SVP Section C, Seattle, WA, for Respondent.
HOUGHTON, P.J.
¶ 1 Darnell McGary appeals[1] the trial court's denial of his motion for a full evidentiary hearing under RCW 71.09.090,[2] the sexually violent predator (SVP) statute. He argues that (1) the trial court impermissibly weighed evidence presented at his show cause hearing, (2) he presented sufficient evidence to establish probable cause requiring a full evidentiary hearing, and (3) RCW 71.09.090(4) violates due process as applied to him. We affirm.

FACTS
¶ 2 McGary is a convicted sex offender. In re Detention of McGary, 128 Wash.App. 467, 470, 116 P.3d 415 (2005).[3] In 1988, he pleaded guilty to two counts of first degree rape, one count of indecent liberties by forcible compulsion, two counts of first degree burglary, and one count of second degree burglary. McGary, 128 Wash.App. at 470, 116 P.3d 415. He served approximately nine years' incarceration. McGary, 128 Wash. App. at 470, 116 P.3d 415. While incarcerated, he committed more than 40 major infractions, including numerous threats to staff, and he suffered from paranoia and delusions that prison officers were trying to kill him. McGary, 128 Wash.App. at 470, 116 P.3d 415.
¶ 3 In April 1998, before McGary's scheduled prison release, the State filed a petition for his civil commitment under chapter 71.09 RCW as a SVP. McGary, 128 Wash.App. at 470, 116 P.3d 415. The State established probable cause, resulting in McGary's commitment at the Special Commitment Center (SCC) pending trial. McGary, 128 Wash. App. at 470, 116 P.3d 415. Because he refused to take psychiatric medication to control his paranoid and schizophrenic behavior, his condition deteriorated, and the Department of Social and Health Services (DSHS) transferred him to Western State Hospital under chapter 71.05 RCW, the civil commitment provision. McGary, 128 Wash.App. at 470-71, 116 P.3d 415. As a result, in April 2000, the State dismissed its SVP petition without prejudice. McGary, 128 Wash.App. at 471, 116 P.3d 415. After his condition stabilized in December 2000, the State refiled the SVP petition. McGary, 128 Wash.App. at 472, 116 P.3d 415.
¶ 4 McGary then stipulated to probable cause and civil commitment under chapter 71.09 RCW. McGary, 128 Wash.App. at 473, 116 P.3d 415. Specifically, he stipulated that he suffers from schizophrenia and an antisocial personality disorder. He also stipulated that his antisocial personality disorder "causes him serious difficulty controlling his sexually violent behavior," making him "more likely than not to engage in predatory acts of sexual violence if he is not confined in a *208 secure facility."[4] I Clerk's Papers (CP) at 91. The trial court concluded that his antisocial personality disorder is a "mental abnormality" under RCW 71.09.020(8). I CP at 92. The stipulation allowed his placement into a less restrictive alternative in the SCC. McGary, 128 Wash.App. at 473, 116 P.3d 415. That less restrictive alternative proved unsuccessful when he stopped taking his medications.
¶ 5 Since his civil commitment, DSHS has reviewed McGary's case annually following RCW 71.09.070. In January 2008, Dr. Jonathan Allison evaluated McGary and determined that he continues to suffer from schizophrenia, paranoid type, paraphilia, not otherwise specified (nonconsent), and antisocial personality disorder.[5]
¶ 6 Dr. Allison's report also indicated that McGary's medication compliance and participation in sex offender treatment through the years have been "inconsistent," that such inconsistencies contributed to a failed placement in a less restrictive alternative, and that he was "not participating in any kind of sex offender treatment" at the time of the assessment. I CP at 148. Dr. Allison noted that, although McGary currently took his schizophrenia medication, his thin king reflected a "delusional network in which he works to undermine his own interest. For example, since he believes he does not have a mental illness, he sets himself up to stop taking his medication." I CP at 145. Dr. Allison further noted McGary's statement that he was taking his schizophrenia medication only because his SCC doctor required it.
¶ 7 Dr. Allison concluded that McGary's "delusional network is centered on one coherent theme: if he does not have a mental illness, a personality disorder and a paraphilia, he does not need to be at the [SCC]. This thereby demonstrates his inability to accurately evaluate his own risk to the community at large." I CP at 145.
¶ 8 McGary declined to be interviewed for Dr. Allison's evaluation. Based on the results of Static-99 and Minnesota Sex Offender Screening Tool-Revised, Dr. Allison opined that McGary would likely reoffend if released into the community. Because McGary refused to participate in treatment and did not believe he needed to take his medication, Dr. Allison said that he continued to meet the SVP definition.
¶ 9 Because McGary did not waive his right to petition for release as part of his annual review, on August 19, 2008, the trial court held a show cause hearing to determine whether he continued to meet commitment criteria. To establish probable cause that he no longer met commitment criteria, McGary presented Dr. Theodore Donaldson's report, which addressed the question of possible change through treatment only in its conclusion,
McGary no longer suffers from a paraphilic disorder (if he ever did) and that this change could be due to any number of conditions, including his early participation in treatment, including working on sexual autobiographies and relapse prevention plans. While the research does not indicate that these activities have any known relationship to recidivism, he has participated in treatment and he has apparently changed as a result of something, whether it was the treatment or perhaps self-reflection.
III CP at 447.
¶ 10 McGary also moved to vacate his commitment order under CR 60(b)(3) and (11), based on an alleged error unknown at the time of his commitment in the DSM-IV-TR's paraphilia definition. Dr. Michael First, a self-described editor of the DSM-IV-TR, gave a deposition in an unrelated case and *209 stated that in the DSM-IV-TR, the editors changed a diagnosis criterion for paraphilia to a disjunctive "fantasies, sexual urges, or behaviors." II CP at 257. He said that he did not realize until later the impact this could have on wrongfully diagnosing paraphilias; although a paraphilia diagnosis does not require a finding of all three factors (urges, fantasies, and behaviors), it requires more than behavior. Dr. First never interviewed McGary or reviewed any information about him.
¶ 11 The trial court refused to order a full evidentiary hearing, concluding that the State met its prima facie burden and that McGary did not show a change in his condition or that release to a less restrictive alternative was in his best interest. Faced with both a show cause hearing and a CR 60 motion to vacate, the trial court also concluded that it "was not persuaded by Dr. Donaldson's" report. III CP at 497.
¶ 12 In its oral ruling, the trial court stated,
The deposition of Dr. First, I really don't find very persuasive since, of course, he knows nothing about Mr. McGary's case. The potential, quote, unquote, misdiagnosis because of the "and behaviors" instead of the "or behaviors" seems to me is pretty speculative. Could there have been some mistake? Well, I don't know. Possibly there could have been, but I'm certainly not convinced that there was.
Report of Proceedings (RP) at 26-27. McGary's counsel interrupted to point out a statement by Dr. Donaldson that McGary's condition had changed or was in remission. The trial court refused to change its finding and expressed concern that Dr. Donaldson had tailored his conclusion to address the court's concerns from an earlier review hearing.[6] The trial court reiterated its conclusion, stating, "I do not believe Mr. McGary has met his burden of proof. I think he's shown something to indicate that perhaps he doesn't have the mental disorder at this time but not enough to warrant an evidentiary hearing at trial." RP at 32. The trial court also denied McGary's CR 60 motion as time-barred. McGary appeals.

ANALYSIS

WEIGHING OF EVIDENCE
¶ 13 McGary first contends that the trial court improperly weighed the evidence when it stated it was "not persuaded" by Dr. Donaldson's report and that Dr. First's deposition was not persuasive and speculative. Appellant's Br. at 6. The State counters that the trial court's comments were appropriate because (1) McGary presented some of this evidence in the context of a CR 60(b) motion, (2) the trial court properly determined whether sufficient facts supported probable cause, and (3) McGary invited any improper comments. The State's reasoning persuades us.
¶ 14 RCW 71.09.090 establishes the procedures through which the State may release an SVP from custody. RCW 71.09.090(2)(a) provides for a show cause hearing to determine whether probable cause exists to warrant a full hearing on whether the committed person's condition has so changed that "(i) He or she no longer meets the definition of [an SVP]; or (ii) conditional release to a proposed less restrictive alternative would be in the best interest of the person and conditions can be imposed that would adequately protect the community."
¶ 15 Mere conclusory statements insufficiently establish probable cause. In re Det. of Jacobson, 120 Wash.App. 770, 780, 86 P.3d 1202 (2004). In determining whether probable cause exists, a trial court may properly look beyond an expert's stated conclusion to determine whether sufficient facts support it. Jacobson, 120 Wash.App. at 780, 86 P.3d 1202. But a trial court may not comment on an expert's credibility. Jacobson, 120 Wash.App. at 780-81, 86 P.3d 1202.
¶ 16 McGary included Dr. First's deposition in support of his CR 60(b) motion for a new trial. CR 60(b) does not limit a trial court's ability to weigh evidence. Therefore, the trial court properly commented in this instance. But even if we considered Dr. *210 First's deposition as part of McGary's petition for a full evidentiary hearing, the trial court's comments, when viewed in context, indicate only its determination of the speculative nature of Dr. First's testimony given his complete lack of familiarity with McGary's case. Thus, the trial court properly determined that sufficient facts did not support using Dr. First's deposition.[7]

PROBABLE CAUSE

A. Schizophrenia
¶ 17 McGary next contends that he established probable cause requiring a full evidentiary hearing by producing evidence that medication currently controls his schizophrenia. The State counters that this evidence is irrelevant because (1) McGary's antisocial personality disorder, not his schizophrenia, was the basis for his commitment; and (2) because his medication controlled his schizophrenia at the time of his commitment, such a current circumstance is not a relevant change in his condition requiring a new trial. We agree with the State.
¶ 18 We review whether the evidence meets the probable cause standard de novo. In re Det. of Petersen, 145 Wash.2d 789, 799, 42 P.3d 952 (2002). Probable cause to proceed to a full evidentiary hearing exists if (1) the State fails to present prima facie evidence justifying the continued commitment or (2) the committed person presents evidence that his or her condition has "so changed" that he no longer meets the SVP definition or meets the requirement for release to a proposed less restrictive alternative. RCW 71.09.090(2)(c); Petersen, 145 Wash.2d at 798-99, 42 P.3d 952. RCW 71.09.090(3) governs such hearings. See RCW 71.09.090(3)(a)-(c).
¶ 19 In 2005, the legislature amended RCW 71.09.090 to add subsection (4). Laws of 2005, ch. 344, § 2. The amendment's legislative history discussed the legislature's concern that recent court decisions had subverted the "statutory focus on treatment," and it reiterated the importance of "prolonged treatment in a secure facility followed by intensive community supervision in the cases where positive treatment gains are sufficient for community safety." Laws of 2005, ch. 344, § 1. It further noted, "These provisions are intended only to provide a method of revisiting the indefinite commitment due to a relevant change in the person's condition, not an alternative method of collaterally attacking a person's indefinite commitment." Laws of 2005, ch. 344, § 1 (emphasis added). Former RCW 71.09.090 (2005) provided in relevant part,
(4)(a) Probable cause exists to believe that a person's condition has "so changed," under subsection (2) of this section, only when evidence exists, since the person's last commitment trial proceeding, of a substantial change in the person's physical or mental condition such that the person either no longer meets the definition of [an SVP] or that a conditional release to a less restrictive alternative is in the person's best interest and conditions can be imposed to adequately protect the community.
(b) A new trial proceeding under subsection (3) of this section may be ordered, or held, only when there is current evidence from a licensed professional of one of the following and the evidence presents a change in condition since the person's last commitment trial proceeding:
. . . .
(ii) A change in the person's mental condition brought about through positive response to continuing participation in treatment which indicates that the person meets the standard for conditional release to a less restrictive alternative or that the person would be safe to be at large if unconditionally released from commitment.
(Emphasis added.)
¶ 20 Although McGary stipulated that he suffered from schizophrenia, the stipulation indicates that his antisocial personality disorder *211 was the "mental abnormality" forming the basis of his commitment. I CP at 92. He presents no evidence of a relevant change in that disorder.
¶ 21 Moreover, medication controlled his schizophrenia at the time of his commitment. That medication again controls his schizophrenia is not a relevant change in his mental condition because his commitment trial proceeded under the plain language of former RCW 71.09.090(4)(a) and (b)(ii). Rather, the danger his schizophrenia poses to the community appears to stem from his reluctance to comply with his medication regimen without supervision. Indeed, the State presented evidence that he would cease taking his medication once unsupervised. He presents no evidence to the contrary and his argument fails.

B. Paraphilia
¶ 22 McGary further contends evidence that his paraphilia diagnosis was in error served to establish probable cause requiring a full evidentiary hearing. The State counters that (1) McGary's antisocial personality disorder, not paraphilia, formed the basis of his commitment, and (2) Dr. Donaldson's report does not indicate a change in McGary's paraphilia as a result of a positive response to continuing participation in treatment. Again, we agree with the State.
¶ 23 We note that the basis of McGary's commitment was his unchanged antisocial personality disorder, not his paraphilia. Moreover, Dr. First's deposition disputes the validity of McGary's original paraphilia diagnosis. Dr. First's deposition is not evidence of a relevant change in McGary's mental condition due to continuing participation in treatment. Thus, without more, it is an impermissible collateral attack on his commitment. See In re Det. of Reimer, 146 Wash.App. 179, 198-99, 190 P.3d 74 (2008) (rejecting as collateral attack evidence challenging initial diagnosis).
¶ 24 Finally, Dr. Donaldson concluded that McGary's paraphilia was in remission, but he did not know why. He could not point to any specific factors that brought about the change and stated that McGary "has apparently changed as a result of something." III CP at 447. Dr. Donaldson hypothesized that "this change could be due to any number of conditions," including treatment prior to McGary's commitment as an SVP and "perhaps self-reflection." III CP at 447.
¶ 25 Mere conclusory statements unsupported by sufficient facts do not establish probable cause. Jacobson, 120 Wash.App. at 780, 86 P.3d 1202. Furthermore, McGary has refused to participate in sex offender treatment since at least 2007. Because Dr. Donaldson relied on conjecture, not facts, to support his conclusion that McGary's paraphilia is in remission, it does not establish probable cause of a change in his mental condition due to a positive response to continuing participation in treatment. Accordingly, McGary's argument fails.

C. Antisocial Personality Disorder
¶ 26 McGary next contends that his antisocial personality disorder, standing alone, does not support his continued commitment. He did not raise this argument below.
¶ 27 The trial court considered whether purported changes in McGary's schizophrenia and paraphilia justified a full hearing regarding his continued commitment. It did not consider whether his antisocial personality disorder alone provided a basis for his continued commitment. Accordingly, this issue is not properly before us under RAP 2.5(a) and we decline to review it.[8]

*212 DUE PROCESS
¶ 28 Finally, McGary contends that former RCW 71.09.090(4) violates due process as applied to him. He argues it allows the State to confine him without proving his paraphilia beyond a reasonable doubt because it deprives him of a meaningful opportunity for a hearing.
¶ 29 When the original basis for commitment no longer exists, a committed person is "entitled to constitutionally adequate procedures to establish the grounds for his confinement." Foucha v. Louisiana, 504 U.S. 71, 79, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Procedures adequate to satisfy due process rights involve, at a minimum, a meaningful opportunity for a hearing. Mathews v. Eldridge, 424 U.S. 319, 333-34, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
¶ 30 First, McGary, citing Foucha, 504 U.S. at 80, 112 S.Ct. 1780, contends that former RCW 71.09.090(4) violates due process as applied because it allows the State to confine him in the absence of his original basis of commitment without proving a new basis for his commitment. Because he continues to suffer from antisocial personality disorder, the original basis for his commitment, we disagree.
¶ 31 Next, McGary argues that former RCW 71.09.090(4) violates due process as applied because it deprives him of a meaningful opportunity for a hearing regarding evidence of his possibly erroneous paraphilia diagnosis. But in In re Detention of Fox, 138 Wash.App. 374, 398-400, 158 P.3d 69 (2007), we determined that former RCW 71.09.090(4) did not violate due process because it did not prevent the petitioners from introducing actuarial or clinical data as evidence; instead, it prevented a finding of probable cause based solely on such evidence demonstrating a change in a single demographic factor.
¶ 32 Likewise, here the statute does not prevent McGary from introducing evidence of an erroneous paraphilia diagnosis at a show cause hearing; it only prevents a finding of probable cause based solely on evidence not constituting a change in mental condition due to continuing participation in treatment. Furthermore, McGary may raise this challenge to his commitment in the context of a CR 60 motion, a personal restraint petition, or a writ of habeas corpus in federal court. See CR 60(b)(3), (11); RAP 16.4(c)(3), (5), (7); 28 U.S.C. §§ 2241-2255 (2010). Indeed, the legislature explicitly noted its intention not to foreclose other avenues of relief beyond the statutory scope of SVP show cause hearings. See Laws of 2005, ch. 344 § 1. The statute does not violate due process as applied, and McGary's argument fails.[9]
Affirmed.
We concur: HUNT and QUINN-BRINTNALL, JJ.
NOTES
[1] We granted McGary's motion for discretionary review.
[2] The legislature amended RCW 71.09.090 in 2009. Laws of 2009, ch. 409, § 8. None of the amendments involve substantive changes affecting our analysis. Unless otherwise noted, we cite to the current version of the statute. After the trial court commits an individual as an SVP to the custody of the Department of Social and Health Services, the Department must annually review whether the individual continues to meet the SVP definition or qualifies for release to a less restrictive alternative. RCW 71.09.070. If the committed individual does not affirmatively waive the right to petition for release as part of the annual review, the trial court must hold a show cause hearing regarding the commitment. RCW 71.09.090(2)(a). At the show cause hearing, if either the State fails to present prima facie evidence that the individual meets the SVP definition or does not qualify for release to a less restrictive alternative or the individual establishes probable cause that he no longer meets the SVP definition or qualify for release to a less restrictive alternative, the trial court must order a full evidentiary hearing on these issues. RCW 71.09.090(2)(c), (3)(a).
[3] McGary earlier appealed whether the SVP petition resulting in his commitment failed to allege a "recent overt act" and whether the petition violated his guilty plea. McGary, 128 Wash.App. at 469, 116 P.3d 415. We affirmed his commitment. McGary, 128 Wash.App. at 469, 116 P.3d 415.
[4] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) (DSM-IV-TR) at 297-98, 685, lists schizophrenia as a psychotic disorder rather than a personality disorder. Thus, McGary did not stipulate that his schizophrenia made him unable to control his sexually violent behavior or increase his likelihood of engaging in predatory acts of sexual violence.
[5] Some disagreement exists about McGary's paraphilia diagnosis. In 2002, Dr. Robert Seeri did not believe that McGary suffered from paraphilia. But later evaluations found that McGary did suffer from paraphilia.
[6] Specifically, the trial court stated, "But if I were suspicious, I would think this addendum was just drawn to address concerns at the last review." RP at 30.
[7] But the trial court expressly stated its concern that Dr. Donaldson had tailored his conclusions in his report to address the trial court's concerns during McGary's earlier review hearing. Although, arguably, the trial court improperly commented on Dr. Donaldson's credibility, this does not affect our analysis.
[8] McGary also contends in his reply brief that his opening brief raised the issue whether his continued commitment based only on his antisocial personality disorder constitutes manifest constitutional error. But the section of his opening brief to which he refers discusses whether former RCW 71.09.090(4) violated due process because it permitted his continued commitment based on a paraphilia diagnosis not proven beyond a reasonable doubt and deprived him of a meaningful opportunity to be heard. We do not consider arguments made for the first time in a reply brief. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992). Thus, we decline to review this issue.
[9] Additionally, McGary's due process claim raises possible ripeness concerns as applied to the facts of his case. Even if he could introduce evidence of an erroneous paraphilia diagnosis, he could not demonstrate a relevant change in the original basis for his commitment, his antisocial personality disorder. This is distinguishable from a case where former RCW 71.09.090(4) would prevent a defendant from establishing probable cause based on evidence of an erroneous diagnosis of the original basis for commitment.