[No. 39548-7-II.   Division Two.   March 15, 2011.]

*In the Matter of the Detention of* GEORGE MITCHELL, *Appellant.*

*Sheri L. Arnold* and *Reed M.B. Speir*, for appellant.

*Robert M. McKenna, Attorney General,* and *Sarah Sappington, Senior Counsel,* for respondent.

¶1 VAN DEREN, J. — George Mitchell, a civilly committed sexually violent predator (SVP) under chapter 71.09 RCW, appeals the trial court's denial of his April 2009 CR 60(b) motion to vacate the trial court's July 2008 post-commitment order that denied him a full evidentiary hearing on his annual SVP review. He argues that the trial court erred in ruling that CR 60(b) does not apply to the circumstances of his case. We affirm.

## FACTS

¶2 On April 29, 1974, Mitchell was incarcerated on one count of rape. On February 5, 1990, Mitchell pleaded guilty to second degree rape and second degree burglary. On March 27, 2000, shortly before his release from incarceration on his 1990 convictions, the State filed a petition under chapter 71.09 RCW to commit Mitchell as an SVP. While Mitchell was awaiting his commitment trial, Brian Judd, PhD, diagnosed him with paraphilia, not otherwise specified (NOS), nonconsent;

sexual sadism;[1] and antisocial personality disorder. At a bench trial, Mitchell cross-examined Judd regarding the validity of a paraphilia NOS, nonconsent, diagnosis. On June 27, 2003, the trial court entered an order civilly committing Mitchell as an SVP. As his SVP commitment requires, psychologists at the Special Commitment Center (SCC) have annually evaluated Mitchell, with the consistent resulting diagnoses of paraphilia NOS, nonconsent; sexual sadism; and antisocial personality disorder.

¶3 On March 11, 2008, because Mitchell did not waive his right to petition for release as part of the annual review of his SVP commitment, the State filed a show cause motion under former RCW 71.09.090(2) (2005),[2] asking that the trial court determine whether Mitchell's condition had so changed that he no longer met the SVP definition or whether release to a less restrictive alternative would be in his best interests.[3] At the annual review show cause hearing on July 25, 2008, Mitchell presented his recent psychological evaluation by Robert Halon, PhD, as well as Halon's live testimony.

---

[1] The record indicates that both paraphilia NOS, nonconsent, and sexual sadism are categorized as paraphilias.

[2] At the time the State filed the show cause motion, former RCW 71.09.090 (2005) was in effect. The legislature amended the statute in 2010. Laws of 2010, 1st Spec. Sess., ch 28 § 2. Because the 2010 amendments do not materially affect our analysis, we refer to the current statute in analyzing Mitchell's claims.

[3] After the trial court commits an individual to the custody of the Department of Social and Health Services (DSHS) as an SVP, DSHS must annually review whether the individual continues to meet the statutory SVP definition or qualifies for release to a less restrictive alternative. RCW 71.09.070. If the committed individual does not affirmatively waive the right to petition for release as part of the annual review, the trial court must hold a show cause hearing regarding the commitment. RCW 71.09.090(2)(a). At the show cause hearing, if (1) the State fails to present prima facie evidence that the individual meets the SVP definition or does not qualify for release to a less restrictive alternative or (2) the individual establishes probable cause that he has "so changed" that he no longer meets the SVP definition or qualifies for release to a less restrictive alternative, the trial court must order a full evidentiary hearing. RCW 71.09.090(2)(c), (3)(a). The trial court retains jurisdiction over an SVP until the SVP is unconditionally released. RCW 71.09.090(5).

¶4 The State presented its 2008 annual evaluation of Mitchell in which SCC psychologists diagnosed him as still suffering from paraphilia NOS, nonconsent; sexual sadism; and antisocial personality disorder and opined that he still met the statutory SVP definition. It also argued that, under the statute in effect at the time, Mitchell failed to meet his burden to demonstrate that his condition had changed as a result of continuing participation in treatment.[4]

¶5 Halon testified that (1) he had identified an error in the *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision, Am. Psychiatric Ass'n (2000) (DSM-IV-TR) regarding its paraphilia diagnostic criteria and (2) he had authored a paper with Michael First, MD, explaining the error and how it leads to misdiagnoses of paraphilias.[5] Halon opined that either Mitchell was misdiagnosed with paraphilia and sexual sadism or these disorders were in full remission. He also suggested that Mitchell was misdiagnosed with antisocial personality disorder. Halon's psychological evaluation of Mitchell further described the alleged error in the DSM-IV-TR, repeated his opinion about the misdiagnosis or remission of Mitchell's paraphilia and sexual sadism, and concluded that Mitchell no longer met the statutory SVP definition.

¶6 The trial court ruled that, based on the evidence it had before it, Mitchell failed to establish probable cause justifying a further, full evidentiary hearing. On July 25, 2008, it entered an order stating that its June 27, 2003, order, civilly committing Mitchell as an SVP, would con-

---

[4] In 2005, the legislature amended RCW 71.09.090 to add subsection (4). LAWS OF 2005, ch. 344, § 2. The amended statute provided in pertinent part that probable cause exists to believe a committed individual has "so changed" as to require a full evidentiary hearing only when there is evidence of "[a] change in the person's mental condition brought about through positive response to continuing participation in treatment" since the individual's last commitment trial proceeding. RCW 71.09.090(2)(c), (4)(b)(ii). In *In re Det. of McCuistion*, 169 Wn.2d 633, 644-45, 238 P.3d 1147 (2010), our Supreme Court held that RCW 71.09.090(4) violated due process. This holding does not affect our analysis of the availability of challenges under CR 60(b) to the trial court's orders following an SVP's annual review hearing.

[5] We previously discussed this alleged error in *In re Det. of McGary*, 155 Wn. App. 771, 778-79, 231 P.3d 205 (2010).

tinue until further ordered by the trial court. Mitchell unsuccessfully sought discretionary review of the trial court's July 25, 2008, order.

¶7 After we issued a certificate of finality, on April 3, 2009, Mitchell filed a motion under CR 60(b)(3) and CR 60(b)(11), asking the trial court "for an order setting aside the original Judgment entered in the above entitled cause number." Clerk's Papers (CP) at 25. Despite the suggestion that Mitchell was challenging the trial court's original 2003 commitment order, his arguments focused on the 2008 order following his annual review hearing. Mitchell argued that (1) the trial court had erred by retroactively applying RCW 71.09.090(4) to his annual review hearing, (2) he had established probable cause that he no longer met the statutory SVP definition because his paraphilia diagnosis was erroneous, and (3) RCW 71.09.090(4)(b)(ii)'s phrase "continuing participation in treatment" was unconstitutionally vague as applied to him. CP at 38.

¶8 In support of his motion, he attached (1) Drs. Halon and First's article discussing the alleged error in and misapplication of the DSM-IV-TR's paraphilia diagnostic criteria; (2) an article authored by "leading members of the legal and psychiatric communities" discussing the same error, CP at 33; (3) Dr. Thomas Zander's article criticizing usage of a paraphilia NOS diagnosis as scientifically valid, reliable, and accepted in the field; and (4) an article cautioning against using paraphilia NOS as a catchall diagnosis when evaluators cannot identify criteria for a specific diagnosis for some persons. Each article addressed the misuse of the DSM-IV-TR to diagnose individuals with paraphilia NOS where no identifiable psychological condition was present.

¶9 In response, the State argued that (1) Mitchell improperly sought to challenge alleged errors of law under CR 60(b), (2) his motion was untimely under CR 60(b)(3) and CR 60(b)(11) to the extent that it challenged the 2003 commitment order, and (3) to the extent that his motion challenged the 2008 annual review hearing order, the

motion failed to satisfy CR 60(b)(3) and CR 60(b)(11) criteria for relief. The trial court denied Mitchell's motion, stating that "under the circumstances . . . CR 60(b)(3) and CR 60(b)(11) do not apply at this juncture of the case." Report of Proceedings at 13. Mitchell appeals.

## ANALYSIS

¶10 Mitchell argues that the trial court erred in denying his motion to set aside the 2008 order entered following his annual review hearing because CR 60(b) applies to postcommitment orders. We disagree.[6]

¶11 We will reverse a trial court's denial of a motion to vacate under CR 60(b) if the trial court manifestly abused its discretion. *Haley v. Highland*, 142 Wn.2d 135, 156, 12 P.3d 119 (2000). A trial court abuses its discretion "only if there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons." *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995). "An appeal from denial of a CR 60(b) motion is limited to the propriety of the denial [and] not the impropriety of the underlying judgment." *Bjurstrom v. Campbell*, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980).

¶12 We interpret court rules using the same construction principles that we apply to statutes. *State v.*

---

[6] Mitchell also argues that the trial court's ruling that CR 60(b) does not apply to its postcommitment order following the annual review hearing violated his right to public access to the courts under article I, section 10 of the Washington State constitution. Under article I, section 10, " '[f]ull access to the courts . . . is a fundamental right.' " *In re Marriage of King*, 162 Wn.2d 378, 390, 174 P.3d 659 (2007) (first alteration in original) (quoting *Bullock v. Superior Court*, 84 Wn.2d 101, 104, 524 P.2d 385 (1974)). Mitchell cites authority establishing this general proposition. But he fails to cite authority supporting his argument that the trial court's denial of his request for a full evidentiary hearing on his motion to vacate the trial court's July 2008 annual review order denied him access to the courts. We do not consider arguments unsupported by citations to authority. RAP 10.3(a)(6).

Even if we were to consider this argument, Mitchell fails to demonstrate how the trial court's refusal to grant his CR 60(b) motion, after permitting full briefing, oral argument, and a hearing, violated his right of access to the courts. Further, Mitchell may seek review of an order following a show cause hearing by seeking discretionary review under RAP 2.3(b), a procedure that satisfies due process. *In re Det. of Petersen*, 138 Wn.2d 70, 88-90, 980 P.2d 1204 (1999). His claim fails.

676

*Carson*, 128 Wn.2d 805, 812, 912 P.2d 1016 (1996). We review interpretation of a court rule de novo. *State v. Robinson*, 153 Wn.2d 689, 693, 107 P.3d 90 (2005). A court rule's plain and unambiguous language renders further statutory construction unnecessary and we apply the court rule as written. *Robinson*, 153 Wn.2d at 693.

■■ ¶13 In *In re Detention of Petersen*, 138 Wn.2d 70, 83-84, 980 P.2d 1204 (1999), our Supreme Court addressed whether SVPs are entitled to appeal as a matter of right under RAP 2.2(a) from a trial court's postcommitment order following an annual review hearing. Petersen argued that he was entitled to such an appeal because a postcommitment order following an annual review hearing is a "final judgment" under RAP 2.2(a)(1) or a "final order" under RAP 2.2(a)(13).[7] *Petersen*, 138 Wn.2d at 84. But the court reasoned that " '[a] final judgment is a judgment that ends the litigation, leaving nothing for the court to do but execute the judgment.' " *Petersen*, 138 Wn.2d at 88 (quoting *Anderson & Middleton Lumber Co. v. Quinault Indian Nation*, 79 Wn. App. 221, 225, 901 P.2d 1060 (1995), *aff'd*, 130 Wn.2d 862, 929 P.2d 379 (1996)). The court observed that former RCW 71.09.090(3) (1995) provided a trial court with continuing jurisdiction over an SVP until the SVP's unconditional release and that a postcommitment order on an annual review hearing under former RCW 71.09.090(2) "dispose[d] only of the petition before the trial court and achieve[d] no final disposition of the [SVP]." *Petersen*, 138 Wn.2d at 88. Thus, our Supreme Court held that a postcommitment order on an annual review hearing is "still an interlocutory order," not a "final judgment" or "final order" under RAP 2.2(a)(1) or

---

[7] RAP 2.2(a) provides:

Unless otherwise prohibited by statute or court rule and except as provided in sections (b) and (c), a party may appeal from only the following superior court decisions:

(1) *Final Judgment.* The final judgment entered in any action or proceeding, regardless of whether the judgment reserves for future determination an award of attorney fees or costs.

. . . .

(13) *Final Order After Judgment.* Any final order made after judgment that affects a substantial right.

RAP 2.2(a)(13). *Petersen*, 138 Wn.2d at 87-88. It also held that the appropriate method for seeking review is a request for discretionary appellate review under RAP 2.3(b) and, furthermore, that the discretionary review procedure satisfies due process. *Petersen*, 138 Wn.2d at 88-90.

¶14 Mitchell cites *In re Detention of Ward*, 125 Wn. App. 374, 104 P.3d 751 (2005), to support his argument that CR 60(b) may be used to challenge the trial court's orders. But *Ward* involved an appeal from an order following a hearing on a CR 60 motion seeking to vacate Ward's stipulation to commitment and his original SVP commitment order. 125 Wn. App. at 375-78. Division One of this court held that Ward could appeal as a matter of right from the trial court's denial of his CR 60(b) motion because he challenged his initial commitment order and, thus, a final judgment. *Ward*, 125 Wn. App. at 377-78. Division One expressly distinguished its analysis of a CR 60(b) challenge to an original SVP commitment order from our Supreme Court's analysis of SVP postcommitment orders in *Petersen*. *Ward*, 125 Wn. App. at 377-78. Neither *Ward* nor CR 60(b) applies here.

¶15 *Petersen* controls the outcome of this case. CR 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding." The plain language of CR 60(b) applies only to final judgments, orders, and proceedings. The trial court retains jurisdiction over an SVP under RCW 71.09.090(5). Its order on a postcommitment annual review hearing under RCW 71.09.090(2)(a) is not a final disposition because final disposition does not occur until the SVP is unconditionally released. Therefore, SVP postcommitment orders arising from annual review hearings that do not result in final unconditional release of the SVP are not final under CR 60(b). Thus, we hold that CR 60(b) is not the means by which an SVP may challenge orders that continue confinement as an SVP following an annual review hearing under

RCW 71.09.090, and we hold that the trial court did not abuse its discretion in denying Mitchell's CR 60(b) motion to vacate the July 2008 postcommitment order denying him a full evidentiary hearing.

¶16 We affirm.

WORSWICK, A.C.J., and HUNT, J., concur.